# NICOLLET HOTEL COMPANY AND OTHERS v. VICTOR CHRISTGAU.[1]

January 13, 1950.

No. 34,978.

*Carl K. Lifson,* for relators.

*J. A. A. Burnquist,* Attorney General, *K. D. Stalland,* Assistant Attorney General, and *George W. Olson,* for respondent.

MAGNEY, JUSTICE.

Certiorari to review the determination by the director of the division of employment and security of relators' 1946 unemployment compensation contribution rate under the provisions of the Minnesota employment and security law. This case involves an application by an employer to the state division of employment and security for administrative reduction of the employer's 1946 unemployment rate and for refund of overpayment of such contributions resulting from the requested rate reduction in consequence of a certain credit offset.

This court has had occasion to pass on several questions which have arisen under the Minnesota employment and security law.

[1]Reported in 40 N. W. (2d) 622.

State v. Donovan, 218 Minn. 606, 16 N. W. (2d) 897; State v. Industrial Tool & Die Works, Inc. 220 Minn. 591, 21 N. W. (2d) 31; Christgau v. Fine, 223 Minn. 452, 27 N. W. (2d) 193; General Mills, Inc. v. Div. of Employment & Security, 224 Minn. 306, 28 N. W. (2d) 847.

The facts in this case are not in dispute. The Nicollet Hotel in Minneapolis is operated by relators. They will be referred to as Nicollet. It regularly filed quarterly returns on form blanks supplied by the division of employment and security of wages paid by it to employes which were taxable, or for whom contributions were required to be made, under the provisions of the state employment and security law, M. S. A. c. 268. For the entertainment of its patrons, it employed dance orchestras and various other group and individual entertainers. Included in the nine quarterly returns for the last calendar quarter in 1939 and the four calendar quarters of 1940 and 1941, Nicollet reported and paid contributions on, as taxable wages, remuneration which it paid to the various entertainers engaged by it. As it later developed, to the extent that these entertainers were independent contractors, the inclusion of their remuneration as taxable wages was in error, and they should not have been included. Independent contractors are not covered by the Minnesota employment and security law. § 268.04, subd. 12(1).

On May 2, 1941, the federal district court for the northern district of Illinois, eastern division (Williams v. United States [D. C.] 38 F. Supp. 536) held that a leader of a so-called name orchestra was not the employer of the individual musicians who played in his orchestra, but that the operator of the establishment which employed the orchestra was. This holding was in line with the federal ruling on the services rendered by orchestra personnel. The circuit court of appeals for the seventh circuit (Williams v. United States, 126 F. [2d] 129) on February 27, 1942, reversed the district court and held that such orchestra leader was actually the employer and that the relationship of the orchestra leader to the operator of the establishment was that of an independent

contractor. The collector of internal revenue continued to rule that the person who operated the place of entertainment was the employer of the orchestra personnel. On January 5, 1945, the district court of the southern district of Iowa (Bartels v. Birmingham [D. C.] 59 F. Supp. 84) decided that the relationship of employer and employe should be determined upon the facts in each particular case, irrespective of provisions of a union contract wherein the operator of a place of entertainment agreed that he and not the orchestra leader was the employer of the individual musicians, and that in that particular case the orchestra leader was actually the employer and subject to the tax. On September 25, 1946, the circuit court of the eighth circuit reversed. Birmingham v. Bartels, 157 F. (2d) 295. On review by the United States Supreme Court, in a decision rendered June 23, 1947, the circuit court was reversed and the decision of the district court affirmed. Bartels v. Birmingham, 332 U. S. 126, 67 S. Ct. 1547, 91 L. ed. 1947, 172 A. L. R. 317. The collector of internal revenue began to change his view of the matter after the decision of the United States district court in the Bartels case in 1945.

After the decision of the circuit court of appeals for the seventh circuit in 1942, Nicollet made applications to the Minnesota division of employment and security for credit adjustment. In a letter dated July 5, 1945, counsel for relators notified the division of employment and security that the federal government had granted Nicollet's claim for abatement as to certain entertainers and assumed that the state would do likewise. This letter states:

"It was understood that the determination by the state of these claims would depend upon the determination by the Federal Government in connection with social security."

The state made its determination on December 27, 1945, and granted a refund in the full amount applied for in the sum of $2,369.56. From this amount, the division deducted or offset $1,622.-34, the amount of unemployment compensation benefits paid to some of the same individuals reported by Nicollet who were in fact not its employes. This was done in conformity with an opinion given

by the attorney general. Nicollet raised no question concerning this action by the division, thus indicating its acquiescence and acceptance. After deducting another amount, which Nicollet admits was proper, a credit memorandum of $410.51 was mailed to Nicollet.

Contributions to the unemployment compensation fund are made by the employer, and the amount of such contribution is determined by taking a certain percentage of wages paid by him with respect to employment. The director of the division sets the rate of each employer based upon such employer's unemployment experience. Section 268.06 details the procedure to be followed. It is not necessary here to describe the mechanics of the determination. After the director has determined the rate of contribution assigned to an employer, such employer is notified of the determination under the provisions of § 268.06, subd. 19, which reads:

"The director shall notify each employer of his rate of contributions as determined for any calendar year pursuant to this section. Such notice shall contain the contribution rate, the factors used in determining the individual employer's experience rating, and such other information as the director may prescribe."

A review of the determination of the director of the rate of contribution is provided for in § 268.06, subd. 20.

On December 27, 1945, when the division made the adjustment above referred to, the contribution rate for the year 1945 had become final and also for all prior years, and the time had also elapsed for securing a reassignment of lower contribution rates for 1945 or any prior year through the making of a voluntary contribution in cancellation of benefits charged to the employer's account for such year. For 1945, the period had expired 30 days from November 6, 1945,, when notice of its rate had been mailed. Nicollet concedes finality as to the rate determination for the years above mentioned, in fact, argues the point affirmatively.

The statutes provide a method by which an employer who has been assigned a contribution rate may obtain a reduction of his contribution rate by the making of voluntary contributions to the

unemployment compensation fund. Section 268.06, subd. 24, sets out the procedure. It reads:

"Any employer who has been assigned a contribution rate pursuant to subdivision 4 of this section may, for the calendar year 1945 or any calendar year thereafter, obtain a cancellation of all benefits, charged to his account during the 36 consecutive month period ending June 30 of the preceding year by making a voluntary contribution to the unemployment compensation fund in an amount equal to all the benefits charged during such period, provided all benefits so charged are less than $300.[2]

"Upon the payment of such voluntary contribution within the period provided for requesting a review and redetermination of employers' rates prescribed in this section, the director shall cancel the benefits so charged and assign to such employer the minimum contribution rate available for such year; * * *."

Thus, under the above statute, the voluntary contribution was limited to $300, and the total amount of benefits charged in the experience period had to be less than $300 to entitle the employer to make any voluntary contribution at all. Subd. 24 was amended by L. 1947, c. 432, § 5, to read in part as follows:

"* * * any employer * * * may, for the calendar years 1946 and 1947, or any calendar year thereafter, *upon the voluntary payment of an amount not exceeding $300 or one-tenth of one per cent of such employer's payroll for the calendar year preceding the computation date, whichever amount is the larger,* obtain a cancellation of benefits charged to his account during the thirty-six consecutive month period ending June 30 of the preceding year equal to such payment so voluntarily made. Upon the payment of such voluntary contribution within 30 days from the date of the mailing to the employer of the notice of his contribution rate as prescribed in this section, *the director shall cancel the benefits equal to such payment so voluntarily made* and compute a new experience ratio for such employer. The employer then shall be assigned the contribution

---

[2]"Benefits" means the money payments payable to an individual with respect to his unemployment. § 268.04, subd. 3.

rate applicable to the category within which the new experience ratio is included. * * * The period for making a voluntary contribution hereunder for the calendar years 1946 and 1947 is hereby extended to June 30, 1947." (Italics supplied.)

An employer can thus cancel out an equivalent amount of benefits charged to his account which affect his contribution rate.

Nicollet made no voluntary payment for the year 1946 until after the amendment of 1947. It took advantage of the extension of time given by the amendment, and on June 27, 1947, made a voluntary payment of $398.47. One-tenth of one percent of the payroll for 1944 amounted to $760.42. It had previously been assigned a rate of 2.25 percent for the year 1946, and the payment of $398.47 reduced the rate to two percent. The payment of the full amount of $760.42 would not have reduced the rate below two percent, so there was no object in contributing the full one-tenth of one percent, or $760.42.

In its statement submitted on June 27, 1947, Nicollet set out that benefits chargeable were $1,945.87 and that the voluntary payment was $398.47. It set out "Balance of benefits chargeable used in redetermining employer's contribution rate for 1946—$1,547.40." For 1947, it made a voluntary contribution in the sum of $900.82, enclosing check in payment. The rate was redetermined at .50 percent. In 1948, Nicollet again made a voluntary contribution in an amount sufficient to reduce its rate from 1.25 percent to .75 percent. No attempt was made to make use of the offset for 1946, 1947, or 1948.

Nicollet now contends that the $1,622.34 which the division on December 27, 1945, offset against the refund which it was entitled to because of payments into the fund for persons who were not its employes, but independent contractors, was available to it as a voluntary contribution. Under date of January 20, 1949, Nicollet made a formal request to have its contribution rate for 1946 redetermined at .50 percent and for a refund of contributions in excess of such rate. The director of the division denied the request on the ground that it was not timely made: It is the contention of Nicollet that the director erred in holding that the application was

not timely made; also, that the $1,622.34 was available to it as a voluntary contribution to be applied to the reduction of its contribution rate for the year 1946.

The decision of the director was not on the merits. Nicollet suggests that if this court finds that the director erred in disposing of the application on the ground which he specified this court could broaden its review and consider the matter on its merits, as the facts disclosed are conclusively established, that they are neither in dispute nor capable of being disputed. The director also invites a determination on the merits.

As we view the matter on its merits, the director made the only disposition of it that he could have properly made. However one may characterize the $1,622.34, whether as a proper credit offset against the refund, and therefore now nonexistent as a fund to be applied in any other way, as claimed by the director, or as a fund improperly applied and therefore available as a voluntary contribution for rate reduction determination, as claimed by Nicollet, the net result is the same, as will be seen. Therefore, since a determination of the character of the $1,622.34 will be of no assistance in the disposition of the questions here involved, no object can be served by going into a discussion of it.

If we assume that the $1,622.34 had been available to Nicollet for application as a voluntary contribution, and that it had in fact been turned over to the fund for such purpose, under the terms of the statute, no advantage to Nicollet, as a rate-determining device would follow. For the year 1946, the year to which Nicollet wishes to apply the $1,622.34, it had already made a voluntary contribution which lowered its contribution rate from 2.25 percent to 2 percent. For that year, it had made a voluntary contribution of $398.47, which lowered its rate. The statute as amended (L. 1947, c. 432, § 5) specifically provides:

"* * * any employer * * * upon the voluntary payment of an amount not exceeding $300 or one-tenth of one per cent of such employer's payroll for the calendar year preceding the computation date, whichever amount is the larger, obtain a *cancellation of bene-*

*fits charged* \* \* \* *equal to such payment* so voluntarily made. Upon the payment of such voluntary contribution \* \* \* *the director shall cancel the benefits equal to such payment* so voluntarily made and compute a new experience ratio for such employer." (Italics supplied.)

The maximum amount which could have been paid as a voluntary contribution for the year 1946 was one-tenth of one percent, or $760.42. But since the contribution of $398.47 gave Nicollet as large a reduction as the payment of $760.42 would have given it, there was no object in its paying more than $398.47, which it did. Under the statute just quoted, no voluntary payment, irrespective of its amount, could have reduced the rate below two percent. Any amount above $398.47 voluntarily contributed to the fund would simply have been a contribution to the fund without any corresponding benefit in the nature of rate reduction. If the $1,622.34 had been available as a voluntary contribution and if it had been applied as Nicollet contends it should have been, we can see nothing of benefit which could accrue to Nicollet in the nature of a reduction of its contribution rate. It would simply be an ineffective voluntary contribution. The director had no authority to reduce Nicollet's contribution rate for 1946 beyond that which he redetermined. Under the law, he would of necessity deny the application. He could not grant Nicollet anything that he could not grant any other employer. On the merits, therefore, we can see no relief for Nicollet.

Since we determine that Nicollet is entitled to no relief on the merits, it seems unnecessary to consider the procedural issue raised, or any other issue.

Affirmed.