SPEAKS, INC., d.b.a. KIRBY CO. OF MINNEAPOLIS,
v. JENS P. JENSEN, JR., AND ANOTHER.
COMMISSIONER OF MANPOWER
SERVICES, APPELLANT.

243 N. W. 2d 142.

May 28, 1976—No. 46042.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, *Peter C. Andrews*, Assistant Attorney General, and *Frank W. Levin*, Special Assistant Attorney General, for appellant.

*Harstad & Rainbow* and *Douglas R. Rainbow*, for respondent.

PER CURIAM.

The commissioner of manpower services appeals from an order of the Hennepin County District Court reversing the commissioner's order finding that Speaks, Inc., is an employer for purposes of the Minnesota law of unemployment compensation and that services performed for Speaks are employment covered by that law. Minn. St. c. 268. We affirm.

Speaks, Inc., is engaged in the business of selling Kirby vacuum cleaners in Minnesota pursuant to an agreement with the Kirby factory in Cleveland, Ohio. Speaks engages dealers to sell the cleaners by door-to-door home solicitation.

The dealers, as a rule, become involved with Speaks through response to a newspaper advertisement and an interview. Those who are accepted sign an "Independent Dealer Agreement" and are offered a 3 1/2-day uncompensated training program designed to familiarize them with the basic layout of the machine and instruct them as to sales techniques. They are provided order forms, a suggested price list, credit contracts, and a vacuum cleaner on a 30-day consignment. Voluntary sales meetings are held twice a week at the Speaks place of business. The dealer agreement may be terminated at any time by either party.

The dealers are free to establish the principal incidents of their sales activities. They are not required to work specific hours or days or any number of hours or days. They are not assigned or limited to a particular territory. They are free to sell any other products including those of competitors. They may employ assistants but are solely responsible for their compensation.

The dealers are compensated on a profit basis. They may sell the cleaners at any price but are obligated to Speaks for the wholesale price of the machines. On cash sales the dealers retain the difference between the sales price and the wholesale price. Credit sales contracts are turned in to Speaks, who in turn assigns them to a finance company Speaks verifies sales for credit purposes only. The dealers receive the excess of sales price over wholesale. Although the dealers may accept trade-ins as part of the purchase price, they turn them over to Speaks without remuneration. The dealers sell the machine they have on consignment, pay the wholesale price out of the sale proceeds, and receive another on consignment. They may, at their option, pay for a machine in advance or take several machines on consignment at one time. Title on machines taken on consignment remains in Speaks.

Dealers generally work out of their homes. Speaks does not provide offices, desk space, or business phones. It does not pay any of the dealers' expenses, nor does it make advances. It does not carry liability insurance on the automobiles used by the deal-

ers or withhold social security or income tax for them.

The commissioner of manpower services held that Speaks was an employer as it had the requisite right to control the means and manner of the dealer's performance through its unconditional right to terminate. The district court reversed, holding that the relationship between Speaks and its dealers was that of vendor and vendee.

"Employment" for the purpose of unemployment compensation cases is defined in Minn. St. 268.04, subd. 12. That section provides in part as follows:

"'Employment' means: (1) Subject to the other provisions of this subdivision 'employment' means service performed prior to January 1, 1945, which was employment as defined in this section prior to such date, and *any service performed* after December 31, 1944, including service in interstate commerce, *by an individual who is a servant under the law of master and servant* or who performs services for an employing unit, *unless such services are performed by an independent contractor.*" (Italics supplied.)

In determining the status of the dealer salesmen under this statute, we apply the same standards of the law of master and servant as are used to distinguish an employee from an independent contractor in workmen's compensation decisions.[1]

In Guhlke v. Roberts Truck Lines, 268 Minn. 141, 143, 128 N. W. 2d 324, 326 (1964), we stated those standards to be as follows:

"* * * [T]he factors applied in testing the relationship are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining

---

[1] See, Castner v. Christgau, 222 Minn. 61, 24 N. W. 2d 228 (1946); Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. 2d 695 (1963); Restatement, Agency 2d, § 220.

whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance."

In Geerdes v. J. R. Watkins, Co. 258 Minn. 254, 262, 103 N. W. 2d 641, 646 (1960), we noted the difficulty encountered in applying these standards to the facts of each case, but added the following guidelines:

" * * * The distinction between an employee and an independent contractor may be said to consist largely in the difference between one who undertakes to achieve a given result under an arrangement with another who has authoritative control over the manner and means in which and by which the result shall be accomplished and one who agrees to achieve a given result but is not subject to the orders of another as to the method or means to be used. While the right to terminate the arrangement is an important factor in determining the relationship of the parties, it alone is not conclusive."

On the basis of the record in this case, it is apparent that neither Speaks nor its dealers view their relationship as one of employer and employee. The nature of the relationship of the parties is to be determined from the consequences which the law attaches to their arrangements and conduct rather than the label they might place upon it.[2] Edelston v. Builders and Remodelers, Inc. 304 Minn. 550, 229 N. W. 2d 24 (1975). We agree with the district court that the degree of control necessary to bring the relationship between Speaks, Inc., and its dealers within the definition of employment is not present in this record.

---

[2] We would not hesitate to look through a device designed to evade the responsibilities placed upon an employer by workmen's compensation and unemployment compensation legislation. The company policy relating to its independent dealers is of such long standing that there can be no inference that it was designed to evade these laws. The company was formed in 1917. The workmen's compensation law was enacted in 1913; the unemployment compensation law, in 1936.

The commissioner of manpower services urges us to follow decisions in other jurisidictions which have held that Kirby dealers are employees for the purpose of unemployment compensation.[3] These decisions are based on a concept of employment much broader than that which underlies the traditional tests of the law of master and servant incorporated into the Minnesota unemployment compensation legislation. The adoption of such a standard is a policy matter that should be addressed to the legislature.

Affirmed.

MR. JUSTICE MACLAUGHLIN took no part in the consideration or decision of this case.

---

[3] See, e. g., Kirkpatrick v. Peet, 247 Ore. 204, 428 P. 2d 405 (1967); Murphy v. Daumit, 387 Ill. 406, 56 N. E. 2d 800 (1944).