Eric J. JENSON, Employee, WBC
Construction, Relator,

v.

DEPARTMENT OF ECONOMIC
SECURITY, Respondent.

No. C4–00–40.

Court of Appeals of Minnesota.

Oct. 17, 2000.

Stephen F. Rufer, Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., Fergus Falls, for relator.

Tracy Mitchell, Mitchell Law Office, Ltd., Elbow Lake, for employee.

Kent E. Todd, Department of Economic Security, St. Paul, for respondent.

Considered and decided by LANSING, Judge, KLAPHAKE, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge.

Relator WBC Construction challenges the determination of the representative of the Commissioner of Economic Security that an employer-employee relationship existed between WBC Construction and Eric J. Jenson and all other construction workers who performed services for WBC Construction according to the provisions of a partnership agreement. We affirm.

## FACTS

In 1995, Eric J. Jenson began working as a construction laborer for Trendsetters Construction Co., which was a partnership owned by Dennis Westrom and his two sons, Torrey and Trevor Westrom. Trevor Westrom was the managing partner and had the right to control the means and manner of the construction workers' performance, including the authority to control (1) when, where, and how the work was to be performed; (2) the number of hours worked and what time of day the work would begin and end; (3) the worker's hourly wage; and (4) the discharge of workers.

On April 1, 1996, Trevor Westrom met with Trendsetters' construction workers, including Jenson, and presented the W B C Worker Built Company Construction Partner Agreement, which was a partnership agreement for a new company, relator Worker Built Company (WBC) Construction. The only partner identified in the partnership agreement was Trevor Westrom, who was named as senior partner. Jensen and several other construction workers each signed a separate copy of the partnership agreement. Under the agreement, upon paying five dollars, each construction worker was entitled to a one-percent ownership interest in WBC for the purpose of furnishing his labor and ability at a contract rate that would be determined based on an average 45–hour work week. The partnership agreement stated that the one-percent partners would be reimbursed on a square-foot basis determined by the bid for each project but that draws would be taken at a rate of $1.50 per unit of project time. Any excess project income was to be divided among partners who worked full time and completed the project based on each partner's hourly contribution. The agreement required partners who voluntarily quit to give a two-week notice to avoid possible penalties and provided that the partnership could purchase equipment or property only upon a unanimous vote of approval by the partners. The partnership agreement also provided that:

> The senior partner has all rights to admit or dismiss anyone at anytime, based on qualifications, policies, conduct, workmanship, and partnership agreement. He also will establish each and all partners [sic] reimbursement amount along with deciding and bid[d]ing and signing all project contracts. He will establish and administer all policies.

> The senior partner is authorized to handle all banking. Banking to include checking account and all checks and transactions for company. The senior partner will handle all job bids, proposals, and acceptances.

Following the creation of WBC Construction, and until Jenson voluntarily quit, WBC only contracted to provide labor for projects that Trendsetters Construction Co. lined up as a general contractor. Jenson and the other construction workers were paid bi-weekly based on the number of hours they worked and a rate determined by Trevor Westrom.

In March 1999, respondent Department of Economic Security issued a determination that an employer-employee relationship existed between WBC Construction

and Jenson and the other laborers who provided similar services under the partnership agreement. The department determined that WBC was required to make contributions to the reemployment insurance fund with respect to wages paid to Jenson and the other laborers. WBC appealed the department's determination. Following a hearing, a reemployment insurance judge affirmed the department's determination. WBC appealed to the Commissioner of Economic Security. The commissioner's representative issued a decision affirming the reemployment insurance judge's determination. The commissioner's representative concluded:

> Trevor Westrom dba WBC Construction is a liable employer subject to the provisions of the Minnesota economic security law. Trevor Westrom dba WBC Construction has had an employment relationship with Eric J. Jenson and any other construction worker who has performed services subject to the provisions of the W B C WORKER BUILT COMPANY Construction Partner Agreement referenced herein. Trevor Westrom dba WBC Construction shall be assigned the tax rate for new employers in the construction industry.

## ISSUE

Was there an employment relationship between WBC Construction and the construction workers who performed services pursuant to the W B C Worker Built Company Construction Partner Agreement?

## ANALYSIS

*1. Existence of Employment Relationship*

An employer must make contributions to the reemployment insurance fund with respect to wages paid for employment. Minn.Stat. § 268.06, subd. 1 (1996).[1]

> "Employment" means:
>
> (1) Any service performed * * * by;
>
> * * *
>
> (d) any individual who is a servant under the law of master and servant or who performs services for any employing unit, unless such services are performed by an independent contractor.

Minn.Stat. § 268.04, subd. 12(1)(d) (1996).[2]

> "Employing unit" means any individual or type of organization, including any partnership * * * which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it.

Minn.Stat. § 268.04, subd. 9 (1996).[3]

> Whether a worker is an employee or an independent contractor involves a mixed question of law and fact. Once the controlling facts are determined, the question whether a person is an employee becomes one of law.

*Lakeland Tool & Eng'g, Inc. v. Engle*, 450 N.W.2d 349, 352 (Minn.App.1990) (citations omitted).

Citing *Pederson v. Pederson*, 229 Minn. 460 39 N.W.2d 893 (Minn.1949), WBC argues that Jenson cannot be considered an employee of WBC because he was a partner in WBC and a partner is not considered an employee of a partnership. WBC contends that the commissioner's representative erroneously focused its consideration on whether Jenson was an employee or an independent contractor rather than determining whether he was a partner. We disagree.

---

1. We apply the 1996 statute because it was in effect when the relevant services were performed. Minn.Stat. § 268.06, subd. 1 (1996), has been renumbered as Minn.Stat. § 268.051, subd. 1.1997 Minn. Laws ch. 66, § 79.

2. Minn.Stat. § 268.04, subd. 12(1)(d) (1996), has been repealed. 1998 Minn. Laws ch. 265, § 46.

3. Minn.Stat. § 268.04, subd. 9 (1996), has been repealed. 1998 Minn. Laws ch. 265, § 46.

The issue in *Pederson* was whether Pederson, a partner who was injured while performing services for the partnership, was an employee of the partnership for purposes of the workers' compensation act. *Id.* at 462, 39 N.W.2d at 894. The court acknowledged that "the great weight of authority is that a partner is not an employe of a partnership." *Id.* But the court then applied the tests laid down in independent contractor-employee cases to the facts before it and concluded that the partnership was not an employer as to Pederson "since indicia of an employer-employe relationship, on which liability attaches, do not exist." *Id.* at 465, 39 N.W.2d at 896. The court explained that although there are instances where a partnership is regarded as an entity,

> it would violate sensible rules of statutory construction to hold that in the case at bar the * * * partnership is an entity as an employer of Pederson, where the partnership agreement between Pederson and [the other partner] has not created the incidents of the relationship of employer and employe.

*Id.* at 466–67, 39 N.W.2d at 897. The court concluded, "this contract of partnership did not create the relation of employer-employe." *Id.* at 467, 39 N.W.2d at 897. The court did not conclude that a partner could never be an employee of a partnership.

■ The *Pederson* court's reasoning indicates that a partner can be an employee of a partnership, and that it is appropriate to apply the law of master and servant to determine whether a partnership agreement has created an employer-employee relationship between a partnership and a partner. The commissioner's representative determined that under the law of master and servant, Jenson and the other one-percent partners were employees of Trevor Westrom dba WBC Construction.

■ The factors applied under the law of master and servant to distinguish an employee from an independent contractor are:

> "(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance."

*Speaks, Inc. v. Jensen,* 309 Minn. 48, 50–51, 243 N.W.2d 142, 144 (1976) (quoting *Guhlke v. Roberts Truck Lines,* 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964)).

> " * * * The distinction between an employee and an independent contractor may be said to consist largely in the difference between one who undertakes to achieve a given result under an arrangement with another who has authoritative control over the manner and means in which and by which the result shall be accomplished and one who agrees to achieve a given result but is not subject to the orders of another as to the method or means to be used. While the right to terminate the arrangement is an important factor in determining the relationship of the parties, it alone is not conclusive."

*Id.* at 51, 243 N.W.2d at 145 (quoting *Geerdes v. J.R. Watkins, Co.,* 258 Minn. 254, 262, 103 N.W.2d 641, 646 (1960)). The label parties give to their relationship is not determinative; the relationship is determined by law. *Id.* (citing *Edelston v. Builders & Remodelers, Inc.,* 304 Minn. 550, 229 N.W.2d 24 (1975)).

■ The WBC Construction partnership agreement gave Trevor Westrom, as senior partner, authority to "establish and administer all policies." Because he had authority to establish and administer all policies, Trevor Westrom had control over the premises where the work was done and authoritative control over the manner and means by which partners accom-

plished a given result. By delegating to Westrom the authority to establish and administer all policies, the one-percent partners became subject to Westrom's orders regarding the method or means of performance and all other matters. In addition, the partnership agreement explicitly gave Trevor Westrom authority to dismiss any employee.

WBC contends that the commissioner's representative's decision implies that WBC was a sham partnership. WBC argues that the key to determining that it is a valid partnership is that profits were shared among the partners. But even if WBC is a valid partnership, the mode of payment is only one of the factors used under the law of master and servant to determine whether an employment relationship exists. Other factors, including the most important factor, the right to control the means and manner of performance, indicate that Jenson was an employee of WBC.

· The commissioner's representative's determination that an employment relationship existed between WBC Construction and Eric J. Jenson and all other construction workers who performed services for WBC Construction according to the terms of the construction partnership agreement was not erroneous.

### 2. *Credibility Determinations*

■ WBC argues that the commissioner's representative's findings are erroneous because Jenson's testimony at the August 3, 1999, hearing before the reemployment insurance judge contradicted the testimony he provided in a December 16, 1998, deposition. We defer to the commissioner's representative's credibility determinations. *Portz v. Pipestone Skelgas*, 397 N.W.2d 12, 14 (Minn.App.1986). "A decision regarding the credibility of witnesses rests within the discretion of the Commissioner, and the testimony should not be reweighed on appeal." *Youa True Vang v. A–1 Maintenance Serv.*, 376 N.W.2d 479, 482 (Minn.App.

1985) (citation omitted). Because the record contains evidence reasonably tending to support the factual findings of the commissioner's representative, we will not disturb those findings on appeal.

### 3. *Scope of Award*

WBC argues that even if Jenson was an employee of WBC, there is insufficient evidence in the record from which the commissioner's representative could have concluded that the other construction workers who signed the partnership agreement were also employees of the partnership. We disagree.

The record reflects that the other construction workers each signed a copy of the partnership agreement to form WBC. Because the partnership agreement gave Trevor Westrom the right to control the means and manner of the other workers' performance, the right to control the premises where the other workers worked, and the right to discharge workers, the commissioner's representative did not err by determining that the other workers who signed the partnership agreement also had an employment relationship with WBC.

### DECISION

Because the terms of the partnership agreement gave Trevor Westrom authority to control the means and manner by which the one-percent partners performed services for WBC, the right to control the premises where the one-percent partners worked, and the right to discharge the one-percent partners, Jenson and the other one-percent partners were employees of WBC.

**Affirmed.**