*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0651**

Murray Gushulak,
Relator,

vs.

Boise Paper Holdings, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 20, 2015
Affirmed
Ross, Judge**

Department of Employment and Economic Development
File No. 31534903-5

Molly J. French, Shermoen & Jaksa, PLLP, International Falls, Minnesota (for relator)

Boise Paper Holdings, LLC, Salt Lake City, Utah (respondent employer)

Lee B. Nelson, St. Paul, Minnesota (for respondent department)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

Murray Gushulak twice attempted to take a shortcut walking through an area near his employer's crane operation that was cordoned off by red tape. He knew his encroachment violated company policy. His employer discharged him, and an unemployment law judge determined that he is ineligible for benefits. Because the unemployment law judge's findings are supported by substantial evidence and because Gushulak's willful disregard of company policy constitutes employment misconduct, we affirm.

## FACTS

Boise Paper Holdings employed Murray Gushulak as a full-time millwright until July 2013 when the company discharged him for violating its safety policy. Boise determined that Gushulak crossed a red-tape barrier around an operating crane twice in one day, once on the crane's left and later on its right.

Boise concluded that Gushulak entered the restricted area, based on a manager's and a crane operator's observations. The manager first confronted Gushulak after watching him duck under the red tape to the right of the crane. Gushulak knew that crossing the tape violates Boise's safety policy. He had no permission to cross the tape. He knew that the policy gave him no discretion to cross regardless of whether he perceived danger. Gushulak had to make several trips between his worksite and various toolboxes, and the shortcut saved him time.

After the manager saw Gushulak cross the tape on the right side, a supervisor questioned crane operator Wayne Smart and learned that Gushulak had also earlier crossed on the left side. Smart had been using the crane to lift a 2,000-pound machine to the building's second floor. Frequent repositioning of the same machine involved rotating the crane's boom over a walkway on the crane's left. Smart or a coworker had draped the red tape across the left-side walkway during those efforts. At one point during a lift, Smart saw Gushulak inside the restricted area and yelled at him. Gushulak had put himself in range of a fatal accident.

Boise discharged Gushulak, and Gushulak sought unemployment benefits. The department of employment and economic development initially decided that Gushulak was eligible for unemployment benefits. On Boise's appeal, an unemployment law judge (ULJ) conducted a hearing to determine whether Gushulak had been discharged for employment misconduct.

Gushulak testified at his unemployment benefits hearing. He admitted to entering the area but only on the crane's right. His testimony was inconsistent in denying the first incident, on the crane's left side. He initially testified that Smart was lying, but he later claimed that the red tape on the crane's left hung very close to the crane, allowing a person to pass along the walkway freely. He first spoke of two tape-lines, and then he said there were three. He finally changed his testimony back to two. He claimed to know the tape's position, but he equivocated about whether he saw it. He said he did not recall entering the walkway on the left side of the crane, but then he said he "could have been there once." He also stated that the tape was present the entire day, but then he said that

3

tape was not always present. Another coworker testified that he never saw tape blocking the leftmost walkway, but he did not know how the tape was replaced over the walkway for each lift. Gushulak questioned Smart's credibility, testifying that Smart disliked him and wanted him fired.

Boise's written policy warns that discharge may result from a gross violation of its safety requirements. The company decided to fire Gushulak after it learned of the second incident, but a manager testified that even one violation of the red-tape policy merits termination. Boise had discharged another employee for a similar violation two years earlier. The company decided that Gushulak's July 2013 actions constituted his second offense. In January of that same year, Gushulak had ignored orange pylons and parked his car in an area designated for foot traffic only.

The ULJ found that Boise's safety policy prohibited employees from crossing red-tape barriers without permission and that Gushulak twice intentionally entered the restricted area near a crane without permission—once during a lift. The decision requires Gushulak to repay $8,358 in benefits that had been distributed to him in error. Gushulak requested reconsideration, and the ULJ affirmed her decision. Gushulak appeals by certiorari.

## DECISION

Gushulak makes two arguments challenging the ULJ's decision that he engaged in employment misconduct. He argues that insufficient evidence supports the finding that he crossed red tape on the left side of the crane. He also argues that crossing the red tape does not constitute employment misconduct. Neither argument persuades us to reverse.

4

# I

Gushulak rests his challenge to the ULJ's findings primarily on a credibility contest. He argues that insufficient evidence supports the finding that he crossed tape to the left of the crane because Smart's testimony was unreliable. We review a ULJ's factual findings to determine if they are supported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(5) (2012). We evaluate evidence in the light most favorable to the decision. *Van de Werken v. Bell & Howell, LLC*, 834 N.W.2d 220, 221 (Minn. App. 2013). Gushulak supports his credibility-based factual challenge with his contention that Smart did not report the incident, did not personally position the tape, and did not witness Gushulak crossing the tape. The argument fails under our standard of review.

We generally defer to a ULJ's witness-credibility assessments. *Jenson v. Dep't of Econ. Sec.*, 617 N.W.2d 627, 631 (Minn. App. 2000), *review denied* (Minn. Dec. 20, 2000). And the evidence supports the ULJ's finding that Smart was credible. In contrast to Smart's plain testimony that he confirmed that red tape was blocking the area to the left of the crane before each lift and that he saw Gushulak within that restricted area during a lift, Gushulak's testimony was inconsistent. The only other witness's account supports Smart's testimony that the tape was down only between the lifts. The ULJ's finding that Gushulak crossed the red tape twice rests on sufficient evidence.

# II

We reject Gushulak's argument that his conduct was not employment misconduct. We review de novo a ULJ's determination that a particular act constitutes employment misconduct. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

5

Crossing the red tape constituted employment misconduct. Misconduct includes "intentional, negligent, or indifferent conduct . . . that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a) (2012). Gushulak is correct that "simple unsatisfactory conduct" and "good faith errors in judgment" are not misconduct. *See* Minn. Stat. § 268.095, subd. 6(b)(3), (6). But we will hold that employment misconduct occurred if an employee refused to follow reasonable employer policies. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). And an employer's policy to maintain a safe workplace is clearly reasonable. *Id.* at 807. Boise's policy plainly prohibits workers from crossing red tape. This literally bright-line restriction protects employees who might not notice or fully appreciate hazards. Gushulak acknowledges that he intentionally crossed the tape, but according to him, only once. Even a single violation would support the determination, *id.* at 806, and, in any event, the ULJ found that Gushulak crossed the barrier twice on July 16 and that he violated a similar safety policy earlier in the year.

We also reject Gushulak's argument that his conduct was simply unsatisfactory performance rather than misconduct. *See* Minn. Stat. § 268.095, subd. 6(b)(3). Gushulak's conduct does not indicate that he merely failed to meet Boise's performance expectations after trying; it indicates that he deliberately violated Boise's precautions so he could save time.

We similarly reject Gushulak's argument that his conduct represents a mere good-faith error in judgment. *See id.*, subd. 6(b)(6). His argument for a good-faith error-in-

6

judgment holding requires that we interpret the policy to leave room for an employee to exercise judgment about whether to follow the policy. *Id*. But the policy to not cross the red tape without permission is unqualified, affording the employee no discretion.

It might be, as Gushulak maintains, that Boise could have treated his violation as less serious and chosen to warn him rather than discharge him. He points out that his manager had at first assured him that he would not lose his job. But we are not asked to decide whether, as a matter of business judgment, the employer could or should have been more lenient. We decide only whether, as a matter of law, an act constitutes employment misconduct. Even an employer's progressive discipline policy has no bearing on that legal question. *Stagg*, 796 N.W.2d at 316. One manager's tempered and partially informed initial response to Gushulak's misconduct does not influence our legal decision.

Gushulak contends finally that we should reverse so that he may be awarded benefits in light of the statute's remedial purpose and our obligation to construe narrowly any provisions denying eligibility. *See* Minn. Stat. § 268.031, subd. 2 (2012). Our statutory construction of an unclear provision is not called for. Discharge for employment misconduct makes an applicant ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4 (2012). The statute compels us to affirm.

**Affirmed.**

7