*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2162**

Susanne M. Glasser,
Respondent,

vs.

Butler Liberty Law, LLC,
Relator,

Department of Employment and Economic Development,
Respondent.

**Filed August 24, 2015
Affirmed
Hooten, Judge**

Department of Employment and Economic Development
File No. 32408823-5

Susanne M. Glasser, Minnetonka, Minnesota (pro se respondent)

William B. Butler, Butler Liberty Law, LLC, Minneapolis, Minnesota (for relator)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Relator law firm challenges an unemployment law judge's decision that respondent attorney was an employee of relator rather than an independent contractor. We affirm.

## FACTS

In February 2011, relator Butler Liberty Law, LLC (BLL), a law firm owned by William Butler, hired respondent Susanne Glasser, an attorney, to "essentially do all of [the firm's] legal writing." Butler would assign Glasser cases for which he needed writing done, which Glasser would either handle herself or assign to a staff member at BLL. Glasser had some autonomy in drafting these documents and would occasionally dispute the viability of particular legal arguments with Butler, but Butler testified that if a disagreement arose, he "would ultimately have the final say." Glasser would typically draft these documents for signature by Butler, but she would sometimes sign with her own name on behalf of BLL. In addition to drafting court documents, Glasser would draft correspondence to clients and make court appearances on behalf of BLL. Glasser worked full-time for as many as 50 hours per week and was initially paid $1,000 per week. There was no written contract between the parties, nor was Glasser required to keep track of her hours for BLL. Glasser did not receive a benefits package from BLL, and she was unsure whether BLL covered her malpractice insurance.

On June 2, 2011, Glasser formed Glasser Law, LLC, and soon thereafter directed a paralegal at BLL to begin depositing her paychecks into a bank account under that name.

Butler testified that he "ceded" to this change in payment methodology. On June 6, 2011, a creditor obtained a judgment against Glasser personally for at least $23,667.56. In December 2011, this judgment creditor obtained a garnishment summons against Glasser and BLL, but did not name Glasser Law, LLC. When served with the garnishment summons, BLL represented that it did not owe Glasser earnings that would be subject to garnishment. Glasser continued to receive her payments from BLL at her LLC's bank account for the rest of her tenure at BLL, although Glasser testified that she never renewed her LLC's registration.

For most of 2011, Glasser worked from home in completing the assignments given to her by Butler, although she attended a weekly staff meeting at the BLL offices. Toward the end of 2011, Glasser was given additional duties by Butler, including review of incoming mail and managing the firm's calendar. Butler requested that Glasser work at the firm's office space to better handle these duties, and provided her with her own office and parking space. BLL still allowed Glasser some flexibility by allowing her to work from home when needed. Glasser was expected to inform Butler when she would be working from home or if she needed time off for illness, and BLL gave Glasser at least two weeks of paid leave during her time there.

In September 2012, Butler informed the firm that Glasser would "be our legal [chief operations officer] going forward," and later that year Glasser requested and received a pay raise to $1,450 per week. While at the office, BLL provided its office supplies for Glasser's use, and also provided Glasser with business cards indicating that Glasser was an attorney with BLL. Glasser had a Westlaw account through her work for

3

the University of Minnesota Law School, and initially used her own laptop when doing work for BLL. But, in early 2013, Glasser gave her laptop to another worker at BLL, and BLL gave her a new computer. Glasser also used a BLL e-mail address while at the firm.

In 2013, Glasser performed work on one divorce case for another law firm, which was unrelated to her work at BLL. She performed this legal work as Glasser Law, using letterhead and signing pleadings to that effect. She also worked as a legal writing instructor at the University of Minnesota Law School during her tenure at BLL and deposited her paycheck from that job into the same LLC account as her BLL paycheck.

On June 5, 2013, the Minnesota Supreme Court suspended Glasser from practicing law in connection with her conviction of two counts of misdemeanor theft by swindle. *In re Glasser*, 831 N.W.2d 644, 645, 650–51 (Minn. 2013). Glasser's law license was suspended starting June 19, *id.* at 650, and conditionally reinstated on September 11, *In re Glasser*, 837 N.W.2d 39, 39–40 (Minn. 2013) (order op.). Glasser continued to work for BLL and receive her $1,450 weekly paycheck throughout her suspension. Glasser's pay was reduced to $1,250 per week in December 2013, and remained at that level until she separated from BLL.

In December 2013, Butler was suspended from practicing in the Eighth Circuit and the Minnesota federal district court due to his failure to pay sanctions that the federal district court had assessed against him. After Butler's suspension, Butler and Glasser discussed whether Glasser would be willing to appear as Glasser Law on behalf of Butler's clients who still had pending matters before these federal courts. Glasser proceeded to file notices of appearance for several of these cases, and Butler testified that

4

he intended to have Glasser simply appear on his clients' behalf while his clients retained their contractual arrangement with BLL. But, Glasser withdrew from her representation of these clients after contacting the Minnesota Lawyers Professional Responsibility Board (LPRB) and learning that these actions could violate the professional responsibility rules. In connection with her withdrawal from one of these cases, Glasser filed a February 20, 2014 affidavit in federal court attesting that "Glasser Law, LLC has a contract relationship with Butler Liberty Law, LLC to provide various legal services for Butler Liberty Law, LLC clients." On March 2, 2014, Butler informed Glasser that he could not "keep [Glasser's] firm on the regular weekly pay setup any longer," based on the advice Glasser had received from the LPRB and Butler's suspension from practice in federal court.

Glasser filed an application for unemployment benefits that same day. Respondent Department of Employment and Economic Development (DEED) initially determined that Glasser was eligible for benefits based on her employment with BLL. BLL appealed, and an unemployment law judge (ULJ) held an evidentiary hearing on September 9, 2014. Based on the testimony received and documents produced at that hearing, the ULJ concluded that "[t]he totality of circumstances indicates that Glasser was performing services in covered employment as an employee of BLL," and affirmed her eligibility for unemployment benefits. BLL filed a request for reconsideration, which was summarily denied by the ULJ because BLL did "not provide any new facts or arguments" indicating any error in the ULJ's previous decision. The matter comes before this court on a writ of certiorari.

5

**D E C I S I O N**

BLL appeals the ULJ's determination that Glasser was an "employee" entitled to receive unemployment benefits. Chapter 268 is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2014). We review a ULJ's decision to determine whether a relator's substantial rights have been prejudiced by legal errors, findings and conclusions not supported by substantial evidence, or a decision that is arbitrary and capricious. 2015 Minn. Laws 1st Spec. Sess. ch. 1, art. 6, § 12 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(4)–(6) (Supp. 2015)).[1] "Whether an individual is an employee or an independent contractor is a mixed question of law and fact." *St. Croix Sensory Inc. v. Dep't of Emp't & Econ. Dev.*, 785 N.W.2d 796, 799 (Minn. App. 2010). We review the ULJ's findings of fact in the light most favorable to the decision and give deference to its credibility decisions, *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006), but "the determination of whether an employment relationship exists is purely a legal question," *Neve v. Austin Daily Herald*, 552 N.W.2d 45, 48 (Minn. App. 1996).

### A. Credibility Determination

In its order, the ULJ found Glasser more credible than Butler because her testimony was "more detailed, specific, followed a more logical chain of events and seemed more reasonable under the circumstances," whereas Butler "appeared evasive and

---

[1] The 2015 amendment affected only subdivision 7(a). We apply the amended version of subdivision 7(d) because the amendment did not make any substantive changes to that subsection. *Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012).

. . . focused on irrelevant issues that made Glasser appear in a negative light." BLL argues that the ULJ wrongly credited Glasser's testimony over that of Butler because, after Glasser was reinstated to practice law, she sought to enter representation agreements with clients even though she had failed to take the Multistate Professional Responsibility Examination (MPRE) and faced revocation of her attorney license under the probationary terms of her reinstatement.

First, BLL raises this argument in its reply brief for the first time. While DEED notes in its brief that the ULJ found Glasser's testimony credible, this reply argument is outside the scope of DEED's brief. Accordingly, BLL has forfeited this argument. *See Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002) ("If an argument is raised in a reply brief but not raised in an appellant's main brief, and it exceeds the scope of the respondent's brief, it is not properly before this court and may be stricken from the reply brief."), *review denied* (Minn. Feb. 26, 2003).

This argument must fail even if we did reach its merits. We defer to a ULJ's credibility determinations, if they are supported by substantial evidence and the ULJ sets forth valid reasons for crediting or discrediting testimony that may significantly affect the ultimate decision. Minn. Stat. § 268.105, subd. 1a(a) (2014); *see also Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007). BLL does not propose that the ULJ's credibility determination is based on invalid reasoning or is unsupported by the record. Rather, it argues that Glasser's credibility is impugned because she was suspended from practicing law. However, such an argument does not show how the ULJ erred in assessing Glasser's credibility based on the testimony she gave at the hearing.

Moreover, Glasser's suspension order indicated that her failure to submit proof of completion of the MPRE would not trigger automatic suspension until June 1, 2014. *See In re Glasser*, 831 N.W.2d at 651. At the time she offered to take on clients in lieu of their representation through BLL, she was authorized to practice law. Thus, we reject BLL's argument and defer to the ULJ's decision to credit Glasser over Butler.

### B. Employee vs. Independent Contractor

Independent contractors are not covered by unemployment-insurance law. *See* Minn. Stat. § 268.035, subd. 15(a)(1) (2014) (defining "employment" as services performed by "an individual who is considered an employee under the common law of employer-employee and not considered an independent contractor"); *see also Nicollet Hotel Co. v. Christgau*, 230 Minn. 67, 68, 40 N.W.2d 622, 623 (1950). Common law prescribes five factors to be applied in determining whether a worker is an employee or an independent contractor for purposes of determining eligibility for unemployment benefits: "(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge." *Speaks, Inc. v. Jensen*, 309 Minn. 48, 50–51, 243 N.W.2d 142, 144 (1976) (quotation omitted). These factors have been codified by DEED in its agency rules. Minn. R. 3315.0555, subp. 1 (Supp. 2014). The degree of control exercised by the principal over the means and manner of the applicant's performance and the principal's ability to discharge without liability are considered the most important factors under these rules. *Id.* This is a fact-intensive inquiry without a "general rule that covers all situations"; as such, "it is well settled that

8

the nature of the relationship of the parties is to be determined from the consequences which the law attaches to their arrangements and conduct rather than the label they might place upon it." *St. Croix Sensory*, 785 N.W.2d at 800 (quotation omitted).

BLL claims that the ULJ made both legal and factual errors in determining that Glasser was its employee. BLL asserts that the ULJ erred because this case is analogous to *Boily v. Comm'r of Econ. Sec.*, in which the supreme court held that dentists at a dental clinic were independent contractors of the clinic's owner. 544 N.W.2d 295, 296–97 (Minn. 1996). BLL further contends that the record supports the conclusion that Glasser was an independent contractor under the five-factor analysis. We examine each of these factors below.

### *(1) Right to Control the Means and Manner of Performance*

This is the most important factor in determining whether a worker is an employee. *St. Croix Sensory*, 785 N.W.2d at 800. "The determinative right of control is not merely over [w]hat is to be done, but primarily over [h]ow it is to be done." *Frankle v. Twedt*, 234 Minn. 42, 47, 47 N.W.2d 482, 487 (1951).

The ULJ found that throughout Glasser's relationship with BLL, Butler controlled what work assignments Glasser would complete for BLL clients, and while Glasser had "some autonomy to draft documents and present arguments," Butler and BLL retained "the ultimate authority over what arguments Glasser should use when performing services for a BLL client." Based on this finding, the ULJ concluded that "[t]he preponderance of the evidence shows that BLL and Butler had the right to control the entire means and manner of performance."

9

BLL asserts that the record actually shows that it did not have control over Glasser's performance, because Glasser used her own laptop and Westlaw subscription, had a flexible work schedule, and was not restricted in pursuing work outside of BLL. BLL claims that its relationship with Glasser was similar to the parties in *Boily*, wherein the clinic director allowed the dentists to control their own practice by giving them control over scheduling, treatment, and referrals of clients. 544 N.W.2d at 296.

The instant case is readily distinguished from *Boily*. While Butler allowed Glasser to have some input regarding potential lines of argument in her brief drafting, by Butler's own admission he directed Glasser to make certain arguments against her judgment and retained "ultimate authority" over the finished product. "The retained right to instruct or direct the method of work, even if not exercised, is a factor indicating control." *St. Croix Sensory*, 785 N.W.2d at 801. While Glasser was given some autonomy by Butler in her writing, Glasser performed work assigned by Butler, for BLL clients, with Butler ultimately controlling the content of the finished product.

Further, by pointing to facts in the record showing Glasser's independence, BLL ignores other facts in the record that indicate BLL's control over Glasser's performance. Butler himself indicated that Glasser was the firm's chief operations officer, thereby implying his control over Glasser in his role as the sole owner of BLL. The record shows that Glasser was paid a weekly salary, given an office at the firm, expected to be at the office every day, and delegated work to other employees of the firm in executing her job duties. Substantial evidence supports the ULJ's conclusion that BLL exercised control over the means and manner of Glasser's performance.

10

### *(2) Right of Discharge*

DEED agency rules provide that this is the other important factor in this analysis. Minn. R. 3315.0555, subp. 1. The ULJ found that "BLL could discharge Glasser without incurring any liability. This shows an employer and employee relationship." BLL argues that its ability to freely discharge Glasser actually shows an independent contractor relationship. This is incorrect. Independent contractors typically *cannot* have their services terminated without liability if they are fulfilling the terms of their contract with the hiring party. *St. Croix Sensory*, 785 N.W.2d at 803. On the other hand, "[g]enerally, in Minnesota, the employer-employee relationship is at-will, which means that an employer may terminate an employee for any reason or for no reason." *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 19 n.7 (Minn. 2009). That BLL was able to end its relationship with Glasser without incurring liability indicates that Glasser was an employee of BLL.

### *(3) Mode of Payment*

Under this factor, the ULJ found that "Glasser was essentially paid a salary which shows an employer and employee relationship." BLL does not dispute the payment scheme itself, as the record shows that BLL made weekly payments without regard to the amount of hours worked or number of projects completed by Glasser. Glasser was given paid time off as sick leave or vacation leave on at least two occasions. This situation is distinguishable from the dentists in *Boily*, who were compensated with a percentage of their client billings as opposed to a fixed salary. 544 N.W.2d at 296–97.

BLL instead argues that this payment scheme was indicative of an independent contractor relationship, because it believed it was contracting with Glasser's LLC due to

11

the fact that it sent paychecks to the LLC's bank account as opposed to Glasser's personal account. In support of its argument, BLL points to its response to the December 2011 garnishment summons stating that it did not owe Glasser earnings and to Glasser's February 2014 federal court affidavit, which provided that "Glasser Law, LLC has a contract relationship with [BLL]."

However, we look to function, not form, in determining whether an employer-employee relationship existed between the parties. *See Speaks, Inc.*, 309 Minn. at 51 n.2, 243 N.W.2d at 145 n.2 ("We would not hesitate to look through a device designed to evade the responsibilities placed upon an employer by workmen's compensation and unemployment compensation legislation."); *Moore Assocs. v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 393 (Minn. App. 1996) ("The labels that the parties give themselves is not determinative; the relationship is determined by the law, not the parties."). Here, the record indicates that BLL was paying *Glasser* for her services on behalf of BLL. BLL hired Glasser, not Glasser Law, LLC, as the LLC did not exist until June 2011, about three months after Glasser began working for BLL. Furthermore, Glasser testified that she let the LLC registration lapse, and the record shows that the LLC was administratively dissolved in February 2013.[2] Thus, there no longer existed an LLC with

---

[2] BLL also argues that this court should disregard Glasser Law, LLC's February 2013 dissolution, because "this is not an adjudicated fact and is not part of the record" and that it "has not had an opportunity to cross[-]examine the alleged dissolution." While the ULJ did not specifically find this fact, it is in the record. The department submitted a screenshot of the secretary of state's website as an exhibit at the hearing, and BLL did *not* raise an objection to this evidence at that time.

In its brief addendum, DEED also includes an official certificate of dissolution from the secretary of state that is not in the record. BLL asserts that this is an improper

which BLL could have had a contract relationship in February 2014, belying BLL's reliance on Glasser's representations to the federal district court that BLL had a "contract relationship" with her LLC. Therefore, the ULJ's conclusion that BLL's mode of payment to Glasser indicated an employer-employee relationship is supported by substantial evidence.

### (4) Furnishing of Tools and Materials

The ULJ found that this factor showed an employer-employee relationship, because "[m]any of the tools were provided by BLL," such as the use of firm staff, firm business cards, firm letterhead, a firm e-mail address, and a firm laptop that Glasser received in exchange for her personal laptop. BLL argues that this analysis ignores the fact that many of these tools were not "necessary" to Glasser's duties and that Glasser provided the only needed tools for her work: a laptop computer and access to Westlaw. BLL again cites to *Boily*, in which the dental clinic provided "major items of equipment used in the clinic," while each dentist was responsible for hand instruments, malpractice insurance premiums, and continuing education fees. 544 N.W.2d at 297.

Though this factor is closer than the others, we conclude that BLL's arguments are unpersuasive. That Glasser at one point used her own laptop, and used her own Westlaw account throughout her time at BLL, does indicate that she provided some of the tools

---

attempt to supplement the record on appeal. But, this court can take judicial notice of public records within its "inherent power to look beyond the record where the orderly administration of justice commends it." *Eagan Econ. Dev. Auth. v. U-Haul Co. of Minn.*, 787 N.W.2d 523, 530 (Minn. 2010) (quotation omitted). Given the evidence in the record and our ability to take notice of the certificate of dissolution, we take judicial notice of Glasser Law, LLC's administrative dissolution.

needed for her work at BLL. However, all of the other tools and materials noted by the ULJ appear equally necessary to the proper completion of legal work: Glasser relied on paralegals and legal assistants of the firm to assist her with legal filings, and used BLL stamps, letterhead, and copy machines to create and send both client correspondence and court documents. BLL provided her with business cards and an e-mail address, two additional tools frequently used by attorneys. The ULJ's conclusion is supported by substantial evidence in the record.

### (5) Control of Premises Where Work Is Done

The ULJ found that this factor showed an employer-employee relationship because, as of 2012, BLL gave Glasser her own office at the firm and began requiring her to come into the office to better handle incoming mail and calendaring. The ULJ also found that Butler required Glasser to be at the office so he could more closely supervise her written work product. BLL does not specifically challenge this factor, and there is substantial evidence in the record to support these findings.

Because the ULJ's findings are supported by the record and each of the common-law factors indicates that Glasser had an employer-employee relationship with BLL, we conclude that the ULJ did not err by determining that Glasser was an employee of BLL.

**Affirmed.**

14