**ST. CROIX SENSORY INC., Relator,**

v.

**DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.**

**No. A09–1627.**

Court of Appeals of Minnesota.

July 20, 2010.

Andrew E. Tanick, Jody A. Ward–Rannow, Ford & Harrison LLP, Minneapolis, MN, for relator.

Lee B. Nelson, Amy R. Lawler, Department of Employment and Economic Development, St. Paul, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; HUDSON, Judge;  and COLLINS,

Judge.*

## OPINION

HUDSON, Judge.

Relator St. Croix Sensory Inc. argues that the unemployment-law judge (ULJ) erred in determining that certain individuals working for relator as "sensory assessors" were employees rather than independent contractors. Under the undisputed facts, the totality of the circumstances demonstrates that the sensory assessors were independent contractors as a matter of law, and we reverse.

## FACTS

Relator is a sensory laboratory that specializes in odor testing, training, and sales and rental of sensory equipment. Relator performs odor testing of materials, products, and air, and provides training to universities, governments, and industries for "monitoring odors in the field." As part of its odor-testing service, relator hires "sensory assessors" to perform odor evaluations. A sensory assessor sniffs a product or air sample and records his or her observations on a questionnaire, which is tallied and compiled into a client report. Any person can become a sensory assessor if he or she meets the standard industry qualifications.

The assessors perform smell tests at relator's facility, at a neutral site, or at the client's site. In most cases, however, the tests take place in relator's facility. Often, an olfactometer is used to perform the evaluations. An olfactometer is a large, podium-shaped machine with an attached nozzle, which dilutes the sample odor to varying levels. Smell tests are generally performed in a controlled laboratory setting because the olfactometer is very heavy and immobile, and the atmosphere must be completely odor-free to perform the evaluations pursuant to industry standards.

Relator enters into a contract with each assessor that states that the assessors are independent contractors and not employees. The contract provides that an assessor will be paid for each session for which he or she was hired, even if the session is canceled or ends prematurely. Once hired, assessors select sessions to participate in using an online system. If a particular session is selected by more assessors than are necessary to complete the evaluation, relator selects those assessors who have completed the fewest sessions. Assessors are paid a stipend for each testing session ranging between $20 and approximately $100 per session. The general stipend for each session is $38. Assessors are not paid hourly, so if a session ends early or begins late, the assessor will still receive the full stipend but nothing more. Test sessions may last from one to three hours. Only 10 to 15 minutes of each test session are spent actually smelling the samples, and assessors are free to use the remainder of the time as they see fit.

Relator has never asked an assessor to leave during a test session, but would allow or encourage an assessor to leave if he or she became ill during a session. Relator cannot order an assessor to participate in a particular session or discipline an assessor for not participating. Relator has never disciplined an assessor for conduct during a test session and does not believe that the assessors may be disciplined.

Relator trains the assessors "on their sense of smell and their sensory perception in general." If an assessor trained

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

elsewhere began working for relator, the training program would only entail ensuring that the assessor's sense of smell meets industry standards and instructing the assessor on how to complete relator's forms. Relator gives assessors instructions on how to complete the questionnaires and operate the equipment, but does not instruct assessors how to smell the samples. For example, relator does not tell assessors whether to sniff slowly or quickly or whether to take one or many sniffs. Relator does not prescribe any specific method or technique for observing the odors and does not closely monitor test sessions. Relator relies on the assessors' backgrounds to interpret terms in the questionnaires and does not explain terms in the questionnaires. Assessors use their own judgment in assessing odors and recording reactions on the questionnaires.

After conducting a routine audit, the Minnesota Department of Employment and Economic Development (DEED) issued a decision finding that 37 sensory assessors, who were designated by relator as independent contractors and who provided services to relator during 2006 were actually employees. Accordingly, relator was ordered to pay unemployment taxes on wages paid to the sensory assessors and any others performing similar services.

Relator appealed DEED's determination. Following a hearing, the ULJ issued a decision affirming the determination that the sensory assessors were employees rather than independent contractors. The ULJ determined that relator "substantially possessed the right to control the means and manner of the [assessors'] performance," and that relator's right to inspect and stop work or prescribe alterations "suggests a right to discharge an assessor ... without incurring liability." Relator filed a request for reconsideration, and the ULJ affirmed the decision. This certiorari appeal follows.

## ISSUE

Are the sensory assessors working for relator considered to be employees or independent contractors?

## ANALYSIS

Whether an individual is an employee or an independent contractor is a mixed question of law and fact. *Lakeland Tool & Eng'g, Inc. v. Engle*, 450 N.W.2d 349, 352 (Minn.App.1990). We review factual findings in the light most favorable to the decision. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). But where the facts are not disputed, a legal question is presented. *Wise v. Denesen Insulation Co.*, 387 N.W.2d 477, 479 (Minn.App.1986). We review questions of law de novo. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529 (Minn. App.2007). Here, the parties agree that the facts are not disputed, and, accordingly, our review of this issue is de novo.

An employee is an "individual who is performing or has performed services for an employer in employment." Minn. Stat. § 268.035, subd. 13(1) (2008). Employment includes services performed by "an individual who is considered an employee under the common law of employer-employee and not considered an independent contractor." *Id.*, subd. 15(a)(1) (2008). Unemployment taxes are those money payments "to be paid into the trust fund by an employer on account of paying wages to employees in covered employment." Minn.Stat. § 268.035, subd. 25 (2008). The remuneration of independent contractors does not constitute taxable wages covered by the unemployment-benefits law. *Nicollet Hotel Co. v. Christgau*, 230 Minn. 67, 68, 40 N.W.2d 622, 622–23 (1950).

Traditionally, five factors are used to determine whether a worker is an employee or an independent contractor: "(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge." *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964). Of these five factors, the two most important are "the right or the lack of the right to control the means and manner of performance," and the right or the lack of the right "to discharge the worker without incurring liability." Minn. R. 3315.0555, subp. 1 (2009).

The Minnesota Rules also provide additional factors to be considered when determining whether an employment relationship exists, including: (1) whether the individual makes services available to the public; (2) whether the individual is compensated on a job basis or by the hour; (3) whether the individual is in a position to realize a profit or loss as a result of the services offered; (4) whether the individual may end the relationship without incurring liability; (5) whether the individual made a substantial investment in the facilities used to perform the services; (6) whether the individual works simultaneously for multiple firms; (7) whether the individual is accountable for his or her own actions while working; and (8) whether the services performed by the individual are in the course of the employer's organization, trade or business. Minn. R. 3315.0555, subp. 2 (2009).

Finally, it is well settled that "[t]he nature of the relationship of the parties is to be determined from the consequences which the law attaches to their arrangements and conduct rather than the label they might place upon it." *Speaks, Inc. v. Jensen*, 309 Minn. 48, 51, 243 N.W.2d 142, 145 (1976). Therefore, "whether the parties have entered into a contract defining their relationship is not determinative." *Wise*, 387 N.W.2d at 479. In employment-status cases, there is no general rule that covers all situations, and each case will depend in large part upon its own particular facts. *Pettis v. Harken, Inc.*, 263 Minn. 289, 291, 116 N.W.2d 565, 567 (1962). We consider the traditional factors in turn.

### A. The right to control the means and manner of performance

Relator argues that it does not have the right to control the means and manner of the assessors' performance, and, therefore, the assessors are independent contractors. The right of control is the most important factor for determining whether a worker is an employee. *Wise*, 387 N.W.2d at 479. "The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done." *Neve v. Austin Daily Herald*, 552 N.W.2d 45, 48 (Minn.App.1996) (quotation omitted).

The Minnesota Rules provide criteria for determining whether the employer has control over the method or performance of services, but the rules also state that control is determined by the totality of the circumstances. Minn. R. 3315.0555, subp. 3 (2009). The criteria include: (A) whether the employer has authority over assistants; (B) whether the individual is required to comply with detailed instructions or the employer has the right to instruct or direct the method of doing work; (C) whether regular reports relating to how the services are performed must be submitted to the employer; (D) whether the work is done on the employer's premises; (E) whether services must be personally rendered to the employer; (F) whether a continuing relationship exists between the

parties; (G) whether the employer can terminate the individual without incurring liability; (H) whether set work hours are established; (I) whether training is given; (J) whether the employment is full-time; (K) whether the employer furnishes tools, supplies, and materials; (L) whether expenses are paid; and (M) whether the employer is required to enforce standards imposed by regulatory agencies. *Id.*

### Authority over assistants

Control may be indicated "when the employer hires and pays the individual's assistants and supervises the details of the assistant's work." Minn. R. 3315.0555, subp. 3(A). Here, relator hires laboratory associates and assistants who are paid to assist the assessors during test sessions and ensure that assessors perform according to industry standards. The associates present samples to the assessors, ensure that the assessors actually smell the samples, and tell the assessors the sample numbers to mark on the forms. This factor indicates control.

### Right to instruct or direct the method of work

Control may be indicated where the employer instructs or directs the method of work. Minn. R. 3315.0555, subp. 3(B). Two contract provisions address relator's right to instruct or direct the method of work. According to the first provision, the assessor "retains the right and responsibility to control or direct the manner in which the sensory evaluation services are to be performed, consistent with standard methods and procedures of test sessions." The second provision states that relator "retains the right to inspect the assessor's work, to stop work, to prescribe alterations, and generally to ensure its conformity to the needs of [relator] or [relator's] client."

The retained right to instruct or direct the method of work, even if not exercised, is a factor indicating control. *Moore Assocs., LLC v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 393 (Minn.App.1996). Here, although apparently not exercised, relator had the right to stop an assessor during a session or prescribe alterations. The ULJ determined that this contract language gives relator the right to control what is done during test sessions.

But relator argues that under the contract, only the assessors actually exercise control over the method of the work. Relator contends that its contractual reservation of the right to require the assessors to follow certain instructions does not negate the assessors' overall right to control the method and manner of performance. Relator's position is persuasive. A contract must be interpreted to give effect to all of its provisions. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn.1995). Factors that relate to the definition of a task, rather than the means of accomplishing it, are not relevant to the employment-status inquiry and do not support a finding of an employment relationship. *Neve*, 552 N.W.2d at 48. A worker may be an independent contractor and still remain "subject to control over [the] end product." *Id.*

Here, when reading the two contract provisions together, it appears that the assessors control the manner in which they perform the tests—how long to sniff, how many sniffs to take, and what reactions to record—while relator has control over the end product by retaining the ability to stop work or prescribe alterations if the work does not conform to requirements. Thus, relator grants the assessors the freedom to perform the services in a manner of their choosing, but within the parameters set by relator. We also note that some of the parameters set by relator appear to come directly from individual clients or are dic-

tated by industry regulations. We conclude that under the totality of the circumstances, relator does not control the means and manner of performance.

### Requirement to comply with detailed instructions

"Control is indicated when an individual is required to comply with detailed instructions about when, where, and how to work including the order or sequence in which the service is to be performed." Minn. R. 3315.0555, subp. 3(B). At the hearing before the ULJ, an assessor testified that he did not feel that relator supervised the test sessions and that relator has never given a performance review or advice on how to improve performance. "Mere suggestions as to detail or necessary and usual cooperation where the work furnished is part of a larger undertaking, does not normally evince control." *Id.* Oral or written instructions that show how the desired result is to be accomplished evince control, but instructions required by laws or regulations or general instructions passed on by the employer from a client generally do not evince control. *Id.*

Here, relator gives the assessors instructions on how to operate the equipment and complete the questionnaires, but does not instruct the assessors as to their method of sniffing or how to formulate their opinions, which are recorded by the assessors on the questionnaires. Thus, assessors rely on their own sense of smell and background when filling out the questionnaires. Some of the instructions, however, do seem to indicate that the assessors must perform the tests in a certain way in order to properly utilize the equipment and conform to industry standards. But these instructions are not overly complex and relate in part to the standards that must be enforced by regulation. This factor does not demonstrate a strong showing of control.

### Work performed on premises

Generally, testing takes place on relator's premises because a neutral, odor-free environment is required to accurately conduct the tests. But testimony indicated that testing might sometimes take place at a client facility or another location as long as that location meets the testing-site standards. Testing cannot take place at an assessor's home. Performing work on the employer's premises "is not control in itself," but this factor tends to imply control. Minn. R. 3315.0555, subp. 3(D). However, industry standards, rather than relator, generally require that the tests be performed in a laboratory environment. Still, assessors utilize large equipment owned by relator and tests are overseen by lab associates employed by relator.

### Existence of a continuing relationship

Relator admits that there is a continuing relationship with many assessors who "have been doing this for many years." But relator also noted that some assessors perform one or two test sessions and leave, some are "seasonal," and some simply stop bidding on test sessions. Relator does not advertise for assessor positions and new assessors generally find out about the job via word-of-mouth. The continuing relationship between relator and most of the assessors indicates control, but the fact that some assessors are very short-term undercuts that conclusion.

### Provision of tools and materials

Relator provides certain tools, supplies, and materials to the assessors to perform the tests. The furnishing of tools by the employer indicates control. Minn. R. 3315.0555, subp. 3(K). Lack of control is indicated if the worker provides tools, but "not ... if the individual provides tools or supplies customarily furnished by workers in the trade." *Id.* Relator provides the assessors with the evaluation forms and

the use of the olfactometer and a carbon respirator for refreshing their sense of smell between sniffs. Relator also provides sniffing masks that are retained and washed in between uses. The provision of such tools and materials indicates control.

Relator notes that assessors provide their own noses, which is arguably the most important tool for their job. Because assessors must pass a test showing that they have a sufficiently sensitive sense of smell, relator argues that this sets an assessor's nose apart from the body parts of other workers. But the nose is a tool that would certainly be customarily supplied by every worker in the sensory-assessor trade. Thus, lack of control is not indicated by the assessors' provision of their own noses.

### Submission of reports, fixed schedules, training, full-time employment

Numerous other important factors in the record indicate a lack of control. Assessors do not submit regular reports to relator or participate in performance reviews. The assessors do not have fixed work schedules, and they set their own hours because they can choose which test sessions to participate in. Assessors do not work full-time for relator. Some assessors also perform the same job for other sensory assessment agencies in Minnesota, including relator's competitors. Training is limited, and assessors work without excessive supervision.

### Enforcement of regulatory standards

Many of relator's standards and rules used during test sessions are established by outside regulatory agencies, including the European Committee for Standardization and the American Society for Testing and Materials. "If an employer is required to enforce standards or restrictions imposed by regulatory or licensing agencies, such action does not evince control." Minn. R. 3315.0555, subp. 3(M).

In sum, we conclude that, while some of the factors indicate control by relator—particularly relator's control over the assessors' final product—the totality of the circumstances demonstrates that the assessors have a significant degree of independence in determining the means and manner of their own performance and primarily control how they each perform their own job. This supports a determination of an independent-contractor relationship.

### B. Right to discharge without liability

Relator argues that it cannot discharge an assessor without incurring liability, and thus the assessors are independent contractors. The right to discharge a worker without incurring liability is the other most important factor in determining whether a worker is an employee or independent contractor. Minn. R. 3315.0555, subp. 1. "An independent worker generally cannot be terminated without the firm being liable for damages if [the worker] is producing according to his or her contract specifications." *Id.*, subp. 3(G). Control may be indicated "particularly if the individual may be terminated with little notice, without cause, or for failure to follow specified rules or methods." *Id.*

The ULJ found that "any theoretical liability is very limited" because assessors are only paid between $25 and $38 per session, and that relator's right to stop work during a session "suggests a right to discharge an assessor who did not perform to these standards, without incurring liability." The parties' contract does not reflect that an assessor must be paid if he or she refuses to complete the session or does not meet relator's standards. The contract between relator and the assessors is not a fixed, long-term contract; assessors

may work one or multiple test sessions. Moreover, the contract states that assessors will provide services "from time to time at test sessions." The contract also states that it will remain in effect until terminated by written notice of either party. Although the contract requires notice before termination, it appears that the notice may be very short or even immediate.

Here, testimony indicated that, if an assessor was discharged during a session, that assessor would still be paid for the session. Accordingly, relator would at least be liable to the assessor for the cost of the session. The fact that relator may stop work during a session indicates that it may discharge an assessor, but presumably liability would still be incurred. Either party is apparently able to end the relationship at any time, and relator can cancel a test session or refuse to hire an assessor for a future session. Similarly, assessors may stop working for relator at any time simply by not bidding on test sessions or even leaving during a test session, without incurring liability. We conclude that, while control may be indicated because the assessors can be fired with little notice or even during a test session for failing to follow the test session rules, relator would nevertheless incur some liability upon discharge of an assessor. Accordingly, this factor suggests an independent-contractor relationship.

### C. Remaining traditional factors

The remaining traditional factors are the furnishing of tools, control of the premises where work is performed, and the mode of payment. *Guhlke*, 268 Minn. at 143, 128 N.W.2d at 326. The furnishing of tools and control of premises are discussed above and tend to indicate an employee-employer relationship, although this showing is somewhat weakened by the industry standards that dictate where tests can be performed.

Here, the mode of payment indicates independent-contractor status because the assessors are paid on a per-job basis. *See* Minn. R. 3315.0555, subp. 2(B) ("Payment on a job basis is customary where the worker is independent."). Assessors and relator's full-time employees are paid out of different accounts. Furthermore, the contract between relator and assessors provides that the assessors are required to pay all state and federal tax obligations. Evidence that an individual is responsible for his or her own tax obligations is indicative of independent-contractor status. *See Neve*, 552 N.W.2d at 48.

Based on the totality of the circumstances and our review of the five traditional factors, we conclude that the sensory assessors are independent contractors. Our decision is based primarily on the fact that the assessors retain control over the performance of their jobs and have significant freedom in their work. Significantly, many of the rules and instructions given by relator to the assessors relate to industry standards and regulations that relator must enforce. And finally, there is evidence that relator is subject to liability if an assessor is discharged during a testing session.

### DECISION

Because the strength of the factors indicating an independent-contractor relationship outweighs the strength of factors indicating an employer-employee relationship, the ULJ erred in its determination that the sensory assessors were relator's employees.

**Reversed.**