*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2343**

Skylark Opera,
Relator,

vs.

Department of Employment and Economic Development,
Respondent.

**Filed September 22, 2014
Reversed
Chutich, Judge**

Department of Employment and Economic Development
File No. 31557578-2

Michael Weinbeck, Dorsey & Whitney, Minneapolis Minnesota (for relator)

Lee B. Nelson, Craig Gustafson, Munazza A. Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Judith Bevis Langevin, Tracey H. Donesky, Melanie Full, Kristin Parker, Stinson Leonard Street, LLP, Minneapolis, Minnesota (for amicus curiae Minnesota Theater Alliance)

        Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Skylark Opera challenges a final decision by an unemployment-law judge determining that the performers and professional staff members that it hires on a short-term basis for a handful of annual productions are employees rather than independent contractors, and thus that wages paid to these persons are taxable under the unemployment-insurance laws. Because we conclude that the persons hired by Skylark are independent contractors, we reverse.

## FACTS

Skylark is a nonprofit, professional opera company that organizes two performances for a festival in June and two additional concerts throughout the year. Skylark has one permanent employee, an artistic director. Skylark contracts with cast members, chorus members, orchestra members, professional staff members, and laborers to put on its performances. Skylark's artistic director and board of directors decide which shows will be performed and what materials will be part of performances. The artistic director then hires directors. With the assistance of the directors, the artistic director hires performers and professional staff members for the productions. Skylark hires the performers and professional staff members for its productions on a short-term basis, typically for less than two months.

This appeal arises out of an audit of Skylark's payroll records conducted by respondent Minnesota Department of Employment and Economic Development (the department). As a result of that audit, and subsequent administrative review, the

department has determined that Skylark misclassified certain persons that it hired as independent contractors rather than employees. At issue in this appeal is the proper classification of four categories of persons hired by Skylark: cast members, chorus members, orchestra members, and professional staff members.[1]

### Cast members

Skylark provides cast members music, scripts, costumes, and props, but does not provide them training or makeup. Cast members are expected independently to learn their parts before the first rehearsal. Cast members are expected to develop their characters on their own, but the stage director has the ultimate authority over cast members' performances after rehearsals begin. The stage director tells cast members when to enter onto the stage, where to stand on stage, and when to perform songs.

Cast members are paid in two equal lump sums on a flat-fee basis, with no hourly compensation. Cast members are free to work other jobs, including with other performance companies, during their contracts with Skylark. Cast members have no continuing relationship with Skylark after their contracts expire.

Most cast members sign contracts labeling the workers as "Independent Contracting Artist[s]." Skylark occasionally hires cast members through an actors' union, and uses a contract provided by the union. That contract requires Skylark to obtain unemployment-insurance coverage for those union actors. Skylark requires union

---

[1] A fifth category of persons, laborers, was addressed by the unemployment-law judge and determined to be independent contractors. The department has not appealed that classification.

3

actors to pay union dues, pays into pension and health funds for union actors, and pays union actors weekly.

### Chorus members

Chorus members have essentially the same relationship with Skylark as non-union cast members, except that they are paid by a flat fee for performances and an hourly rate for rehearsals. Like cast members, chorus members sign a contract that identifies them as "Independent Contracting Artist[s]"; their relationship with Skylark is limited to the length of the productions; and they are free to pursue other work during the productions.

### Orchestra members

Skylark hires orchestra members individually through a musicians' union. The union, not Skylark, selects the individual musicians. The terms of each contract are set by a master agreement between Skylark and the musicians' union, but each musician signs a separate contract with Skylark. The master agreement requires Skylark to make contributions to the union's pension fund for each musician it hires, but provides that the requirement "is not intended to be relevant or an indication of employment status for any other benefit including compensation addressed by this Agreement." The contracts signed by individual musicians provide: "You are being hired on a per-service basis for this show only and shall at no time be deemed an employee of Skylark Opera." Skylark requires the musicians to remain in good standing with the union.

Skylark provides the musicians copies of the music, which it expects them to learn before coming to rehearsals. Skylark provides music stands, sheet music, and a location for rehearsals and performances, but the musicians provide their own instruments and

clothing. Like cast and chorus members, musicians may perform for other entities while working for Skylark. Orchestra members are also permitted to hire substitutes if they are unable to perform in a show.

Skylark schedules rehearsals for the musicians, and it requires their attendance at all rehearsals and performances. Rehearsals are held at a location determined by Skylark, usually a theater rented by Skylark. Skylark also hires a conductor to direct the musicians' performances at rehearsals and shows. Under their contract with Skylark, musicians are paid in a single lump sum at the beginning of their final performance.

### Professional staff members

Professional staff members—which include directors, stage managers, lighting designers, and prop masters—are selected by Skylark's artistic director.[2] Each member of the professional staff has an individual contract with Skylark. The artistic director selects a director, who is then given responsibility to direct a performance, except that the artistic director can replace the director. The director then gives direction to functional compartments of the professional staff, such as costume designers, choreographers, and lighting designers. This collaboration is facilitated by regular meetings of the professional staff members. Lighting designers use the theater facilities.

### Procedural History

In 2013, the department conducted an audit of Skylark and concluded that a majority of Skylark's workers were employees and not independent contractors for

---

[2] Professional staff members also include costume and set designers. The unemployment-law judges determined costume and set designers to be independent contractors. The department has not appealed that classification.

5

purposes of calculating unemployment-insurance taxes. The department determined that Skylark's cast members, chorus members, professional staff members, and laborers were employees, but that, based on the findings from a 2010 field-review audit, the orchestra members were independent contractors. Based on the results from the 2013 audit, the department determined that Skylark owed $7,119 in back unemployment-insurance taxes.

Skylark appealed this decision as to all of its workers except for the orchestra members. An unemployment-law judge conducted a telephonic hearing and held that Skylark's set and costume designers and laborers were independent contractors, but that the rest of the workers, including the orchestra members, were employees. Skylark requested reconsideration of the decision, and the unemployment-law judge affirmed his previous ruling. Skylark appeals.

## D E C I S I O N

"When reviewing [an unemployment-law judge's] decision, we may affirm the decision, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced." *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 29 (Minn. App. 2012) (citing Minn. Stat. § 268.105, subd. 7(d) (2010)). A relator's substantial rights "may have been prejudiced" if "the findings, inferences, conclusion, or decision" are affected by an error of law, are "unsupported by substantial evidence in view of the entire record as submitted," or are "arbitrary or capricious." 2014 Minn. Laws ch. 271, art. 1, § 1 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)).

6

At issue is whether the four categories of persons hired by Skylark are employees or independent contractors. The distinction is important because unemployment taxes are assessed based on wages paid to employees but not to independent contractors. *See* Minn. Stat. §§ 268.035, subd. 15(a)(1) (defining employment to exclude services provided by independent contractor), 268.051, subd. 1 (providing for unemployment-insurance taxes on wages paid to employees in covered employment) (2012); *Nicollet Hotel Co. v. Christgau*, 230 Minn. 67, 68, 40 N.W.2d 622, 622–23 (1950) (holding that compensation paid to independent contractors is not taxable under unemployment-insurance laws). Thus, if any of the categories of persons hired by Skylark are properly considered employees, Skylark will be assessed increased unemployment-insurance taxes, as well as being required to pay back unemployment taxes due. In addition, when separated from employment, these persons might be eligible for unemployment benefits. *See* Minn. Stat. § 268.069 (2012) (governing payment of unemployment benefits).[3]

"Whether an individual is an employee or an independent contractor is a mixed question of law and fact. We review factual findings in the light most favorable to the decision. But where the facts are not disputed, a legal question is presented. We review questions of law de novo." *St. Croix Sensory Inc. v. Dep't of Emp't & Econ. Dev.*, 785 N.W.2d 796, 799 (Minn. App. 2010) (citations omitted). "In employment-status cases, there is no general rule that covers all situations, and each case will depend in large part

---

[3]  The department asserts that Skylark will not be required to pay any taxes if it elects to make reimbursements under Minnesota Statutes section 268.053 (2012). The record does not reflect whether Skylark has elected to reimburse, but even if Skylark has made such an election, it may still be subject to reimbursement if one of the persons it hires subsequently seeks unemployment benefits. *See* Minn. Stat. § 268.047, subd. 1 (2012).

upon its own particular facts." *Id.* at 800. In this case, the facts surrounding Skylark's workers are not at issue. Thus we independently determine whether those facts demonstrate employment or independent-contractor relationships between Skylark and its workers. *See id.* at 799 (applying de novo review to undisputed facts).

Under the unemployment-insurance laws, an employee is an "individual who is performing or has performed services for an employer in employment." Minn. Stat. § 268.035, subd. 13(1). Employment includes services performed by "an individual who is considered an employee under the common law of employer-employee and not considered an independent contractor[.]" *Id.*, subd. 15(a)(1). The unemployment-insurance laws specifically incorporate the common-law definitions of employer and independent contractor. *Id.*

"Traditionally, five factors are used to determine whether a worker is an employee or an independent contractor: '(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.'" *St. Croix Sensory*, 785 N.W.2d at 800 (quoting *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964)). Of these five factors, the two most important in this context are "the right or the lack of the right to control the means and manner of performance," and "the right to discharge the worker without incurring liability." 39 Minn. Reg. 147, 154 (Aug. 4, 2014), 38 Minn. Reg. 1131, 1143 (Feb. 24, 2014) (to be codified at Minn. R. 3315.0555, subp. 1 (Supp. 2014)). The essential factors

should be considered under the totality of the circumstances. *Moore Assocs., LLC v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 393 (Minn. App. 1996).

Moreover, additional factors "may be considered if the outcome is inconclusive when applying the factors in items A to E. The degree of their importance may vary depending upon the occupation or work situation being considered and why the factor is present in the particular situation." 39 Minn. Reg. at 154. In addition, the unemployment-insurance laws are not intended to "destroy the right of competent parties to negotiate and perform contracts" for the performance of work by independent contractors. *Rochester Dairy Co. v. Christgau*, 217 Minn. 460, 462, 14 N.W.2d 780, 781 (1944).

Applying these principles here, we conclude that each of the categories of workers at issue is hired by Skylark on an independent-contractor basis.

### *Control factor*

Regarding this factor, we begin by observing the unique character of group performance arts. Artists who perform with symphonies, theater groups, or, as here, operas, necessarily attend scheduled rehearsals and take direction from a director. If this type of control, without more, were enough to establish employee status, it is difficult to conceive of a circumstance in which an actor or musician hired by a theater would not be an employee.

As one court observed in concluding that an orchestra's musicians were independent contractors:

> The gathering of musicians to play simultaneously a selected program, with particular instruments represented and performing in harmony, is what defines a symphony orchestra performance. Petitioner, by insisting that the musicians play a certain type of instrument and a particular piece of music at the time and location of the concerts and rehearsals, exercises no more 'direction and control' than a property owner who insists that a builder construct the building at the location and to the particular specifications agreed upon in the bid. In other words, the constraints identified by the [Administrative Law Judge] are not indicative of the type of direction and control in an employment relationship but, rather, flow from the very nature of the result that petitioner desires.

*Portland Columbia Symphony v. Emp't Dep't*, 310 P.3d 1139, 1146 (Or. Ct. App. 2013); *see also Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 490 (8th Cir. 2003) ("emphatically reject[ing]" the notion that "musicians are always employees when they perform in a conducted band or orchestra," reasoning that it "flies in the face of . . . common sense").

Skylark's cast members, chorus members, orchestra members, professional staff and laborers are hired to provide services that, collectively, will result in a performance. But each member of the cast, chorus, and orchestra is expected to independently learn his or her part, using discretion to determine the means and manner of doing so. Professional staff and laborers also work independently to accomplish their assigned tasks. Beyond requiring attendance at scheduled rehearsals and performances—which as we note above is an inherent aspect of group performance arts—Skylark has very little right of control over the persons that it retains. All are free to pursue other work in their respective

10

professions. And the musicians are able to procure their own substitute if they cannot appear at a performance. Furthermore, all of these persons are retained by Skylark on a short-term basis defined by the length of a particular production, which is limited in duration to a number of weeks. Thus, each person working for Skylark does so for only a small part of the year and presumably obtains a majority of his or her work from other sources. Under these circumstances, the control factor favors independent-contractor status.

### *Right to discharge*

Skylark is subject to contractual liability if it terminates the contracts of any of the persons retained for its performances. The department argues that the record is unclear about whether Skylark has incurred liability for discharging workers; the contracts do not provide for *liquidated* damages in the event that an individual is released during a production; and a *force majeure* clause allows Skylark to discharge individuals without liability. But the contracts that Skylark enters into provide a basis for liability, including *actual* damages, regardless of whether any person has actually brought suit, and the *force majeure* clause does not allow Skylark to release performers without cause. *See Florida Gulf Coast Symphony, Inc. v. Dep't of Labor*, 386 So. 2d 259, 263 (Fla. Dist. Ct. App. 1980) (holding that contractual provisions allowing for termination did not grant right to fire without cause and explaining that "[a] failure by either party to abide by the terms of the contract would give the other party a cause of action for breach of contract"). Thus, this factor favors independent-contractor status.

11

*Other factors*

The remaining essential factors are either neutral or favor independent-contractor status. Skylark pays the performers and professional staff on a lump-sum basis, with the exception of an hourly rehearsal fee paid to chorus members. Skylark provides some materials, including music, props, and the theatre itself, but orchestra members supply their own instruments. Skylark controls the locations of performances and rehearsals, but not the locations in which cast, chorus, and orchestra members do the required preparation of their parts. And, although not dispositive of our analysis, it is clear that the parties intended independent-contractor relationships. *See St. Croix Sensory*, 785 N.W.2d at 800 (explaining that the label that parties attach to their relationship is not determinative).

The department asserts that the participation of the musicians' and actors' unions demonstrates that Skylark has employment relationships with the five categories of workers that it retains. Critically, only the orchestra members and a limited number of cast members are represented by unions. Thus, this argument cannot be used to bootstrap the assertion that *all* of the workers are employees. Moreover, we reject the argument even as to the orchestra members and actors represented by the unions. The union representation in this case simply is not probative of any of the five essential factors for determining employment status. Indeed, it appears that the unions acted more in the nature of talent agencies than traditional unions concerning their role with Skylark.

The department also asserts that the terms of Skylark's contracts with the union employees demonstrate the existence of employment relationships. Once again, this

argument applies only to a small subset of the workers at issue. And again we reject the department's argument. The requirements in certain performers' contracts that contributions be made to union pension funds or that Skylark obtain unemployment insurance are not probative of the five essential factors. Moreover, the department's assertion that these requirements evidence the parties' agreement to employment relationships is belied by other language in the orchestra members' contracts disavowing any such agreement.

Our decision today is a narrow one. We merely hold, on the specific facts presented in this case, in which a small non-profit opera hires persons on a short-term basis for only four performances, that the workers hired by Skylark are independent contractors. Our decision should not be construed to extend to all persons hired by operas, orchestras, or theaters. As we note above, "[i]n employment-status cases, there is no general rule that covers all situations, and each case will depend in large part upon its own particular facts." *Id*.

**Reversed.**