*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0387**

John K. Hochstein,
Relator,

vs.

Video Surveillance Solutions, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed December 14, 2015
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 33119285-2

Peter B. Knapp, William Mitchell Law Clinic, Alejandro A. Trevino, Certified Student Attorney St. Paul, Minnesota (for relator)

Video Surveillance Solutions, Inc., Roseville, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator-employee challenges the determination of an unemployment-law judge (ULJ) that he was an employee of respondent-employer, rather than an independent contractor. We affirm.

**FACTS**

Respondent Video Surveillance Solutions, Inc. (VSS) manufactures and distributes surveillance products to commercial, residential, and agricultural customers. Relator John Hochstein started working for VSS on November 13, 2012, as an agricultural sales representative. Prior to working for VSS, Hochstein worked for Hydro Engineering until he was laid off. While working for VSS, Hochstein continued to collect unemployment compensation.

VSS hired Hochstein to follow up with existing clients, create new leads that could result in sales, and take charge of marketing for the agricultural division by attending tradeshows. Hochstein signed a document entitled "VSS Job Description" that listed multiple responsibilities, including: (1) service existing accounts, obtain orders, and establish new accounts, (2) keep management informed by submitting activity and results reports, (3) attend all agricultural tradeshows, and (4) maintain an average of 40 hours of work per week. Hochstein also signed a document entitled "VSS EMPLOYEE NON-COMPETE AGREEMENT" that prohibited him from directly or indirectly competing with VSS during his employment and for two years following his discharge.

Hochstein did not receive medical benefits or a salary, but he received a sales-based commission. VSS provided Hochstein with a company cellphone, a laptop, a VSS email account, computer software that allowed Hochstein to record sales, and VSS business cards. VSS paid Hochstein's business expenses. Additionally, VSS provided Hochstein with training on its product lines and sales-processing software.

Hochstein could work from home, and VSS did not require Hochstein to record his hours. VSS required Hochstein to attend certain meetings at the office that occurred either weekly or bi-weekly and to attend tradeshows. Hochstein did not have authority to hire assistants to perform work for him, and if he wanted to provide a discount to a customer, VSS took the difference from Hochstein's commission. Todd Rubey, CEO of VSS, testified that VSS could discharge Hochstein without incurring unemployment-contract liability.

In March 2013, VSS discharged Hochstein due to Hochstein's upcoming incarceration for violating parole. On October 31, 2013, respondent Department of Employment and Economic Development (DEED) found Hochstein ineligible for unemployment benefits because he quit his job to serve a jail sentence. A ULJ affirmed Hochstein's ineligibility after an evidentiary hearing. After requesting reconsideration, Hochstein petitioned this court for a writ of certiorari.

On December 1, 2014, we remanded the case for the ULJ to determine whether Hochstein was an independent contractor or an employee of VSS. *Hochstein v. Video Surveillance Sols., Inc.*, No. A14-0285, 2014 WL 6724916, at *1–*3 (Minn. App. Dec. 1, 2014). After an evidentiary hearing, a ULJ found that Hochstein was an employee of

3

VSS. The ULJ found Rubey's testimony more credible than Hochstein's because it was detailed and presented a more logical chain of events. Hochstein requested reconsideration, and the ULJ affirmed the findings of fact and decision. This appeal follows.

## D E C I S I O N

Hochstein argues that the ULJ's decision must be reversed because he was an independent contractor. This court may affirm the ULJ's decision, remand for further proceedings, or reverse or modify the decision if Hochstein's substantial rights may have been prejudiced. Minn. Stat. § 268.105, subd. 7(d) (2014). "Whether an individual is an employee or an independent contractor is a mixed question of law and fact." *St. Croix Sensory Inc. v. Dep't of Emp't & Econ. Dev.*, 785 N.W.2d 796, 799 (Minn. App. 2010). A ULJ's factual findings are reviewed in the light most favorable to the decision, and we give deference to credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether an employment relationship exists, however, is purely a question of law. *Neve v. Austin Daily Herald*, 552 N.W.2d 45, 48 (Minn. App. 1996). Questions of law are reviewed de novo. *St. Croix Sensory Inc.*, 785 N.W.2d at 799.

"An applicant who was discharged from employment by an employer is ineligible for all unemployment benefits . . . if . . . the applicant was discharged because of employment misconduct . . . ." Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment" does not include services performed by someone considered an independent contractor. Minn. Stat. § 268.035, subd. 15(a)(1) (2014).

4

Typically, five factors are considered to determine whether an individual is an employee or an independent contractor: "'(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge.'" *St. Croix Sensory Inc.*, 785 N.W.2d at 800 (quoting *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 143, 128 N.W.2d 324, 326 (1964)); *see* Minn. R. 3315.0555, subp. 1 (Supp. 2014) (listing Minnesota's five-factor test). When weighing each factor, the totality of the circumstances should be considered. *Moore Assocs., LLC v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 393 (Minn. App. 1996). However, the right to control the means and manner of performance and the right to discharge without incurring liability are the two most important factors. *St. Croix Sensory Inc.*, 785 N.W.2d at 800.

***Right to Control the Means and Manner of Performance***

Hochstein argues that VSS did not have the right, nor did it attempt, to control the means and manner of his performance. "The right of control is the most important factor for determining whether a worker is an employee." *Id.* "The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done." *Id.* (quotation omitted). Additionally, "it is the *right* to control, rather than the exercise of that right, that is determinative." *Moore Assocs., LLC*, 545 N.W.2d at 393.

VSS controlled the means and manner of Hochstein's performance. VSS required Hochstein to document his activity using VSS's reporting software so Hochstein's superiors could monitor his productivity. VSS required Hochstein to submit daily call reports, weekly work plans, and monthly and annual territory analyses. Hochstein signed

5

an employee non-compete agreement prohibiting him from competing directly or indirectly with VSS during his employment and for two years following discharge.

Additionally, VSS prohibited Hochstein from hiring assistants and required him to help customers experiencing problems with its products. Hochstein could work from home and had discretion to set his schedule, but VSS required Hochstein to attend regular meetings and tradeshows. Hochstein argues that he had the authority to adjust prices. But Rubey testified that Hochstein did not have such authority and that if Hochstein provided a discount, the difference came directly out of Hochstein's commission. Rubey also testified that VSS could tell Hochstein how to sell products, and VSS could discipline Hochstein if it was unhappy with his work.

Hochstein argues that nothing required him to work 40 hours per week and that VSS never attempted to control the manner of his performance. But Hochstein signed the "VSS Job Description" that specifically stated that he must "[m]aintain an average of 40 hours of work per week." VSS did not appear to enforce this requirement, but the five-factor analysis only requires the *right* to control, not the *exercise* of control. *Id.* Thus, this factor weighs in favor of an employer-employee relationship.

### *Mode of Payment*

Hochstein argues that VSS paid him in a manner consistent with independent-contractor arrangements. Hochstein relies on Minnesota's Fair Labor Standards Act (MFLSA) and Minn. Stat. § 181.032 (2014). VSS argues that it paid Hochstein in a manner typical for employees who are paid on commission.

Rather than receiving an annual salary, VSS paid Hochstein a commission based on a percentage of his sales. Hochstein worked for VSS from November 2012 until March 2013. Hochstein did not receive his first paycheck until March 2013. Rubey testified that Hochstein did not receive a check until March because VSS did not pay commission until after it received payment from customers, which often took 45 to 90 days.

Hochstein first argues that the MFLSA requires employers to make a record of the hours worked each day by employees and that VSS failed to comply with this requirement. Additionally, Hochstein argues that he does not fit within the definition of "employee" under the MFLSA. But the MFLSA and Minnesota's Unemployment Insurance Law are two entirely separate statutes, enacted for different purposes, and containing different definitions for the terms "employee" and "employer." *Compare* Minn. Stat. §§ 177.22–.23 (2014), *with* Minn. Stat. §§ 268.03, .035 (2014).

Next, Hochstein argues he was not an employee because Minn. Stat. § 181.032 requires an employer to provide employees with a written statement of earnings at the end of each pay period, and VSS failed to do so. This argument is unpersuasive because the statute sets forth a rule that employers must follow, rather than a definition of "employer," "employee," or "independent contractor." *See id.*

Caselaw supports the conclusion that Hochstein was an employee rather than an independent contractor. In *Boland v. Morrill*, Morrill operated as a salesman and was paid on commission. 270 Minn. 86, 93, 132 N.W.2d 711, 716 (1965). Morrill did not receive his commission until his boss received payment. *Id.* The supreme court

7

classified Morrill as an employee and stated: "That a salesman selling on commission can be an employee can hardly be open to doubt." *Id.*; *see also State by Spannaus v. Mecca Enters., Inc.*, 262 N.W.2d 152, 153–55 (Minn. 1977) (finding an employer-employee relationship when employee was paid strictly by commission).

Additionally, VSS withheld portions of Hochstein's paychecks for state and federal income taxes and social security. In *Boland*, the supreme court stated that deducting social security payments and income taxes constitutes evidence that the individual is an employee rather than an independent contractor. 270 Minn. at 94, 132 N.W.2d at 716. Thus, this factor weighs in favor of an employer-employee relationship.

### *Furnishing of Material or Tools*

Hochstein argues that the tools provided by VSS were not "necessary," and they were not furnished in a "manner consistent with qualified employment." But Hochstein fails to cite any authority to support his assertion that tools must be "necessary" or explain what tools must be furnished to fall within a "manner consistent with qualified employment."

Moreover, the record does not support Hochstein's factual assertions. Hochstein received a company cellphone that identified VSS's name to anyone receiving a call from that cellphone. Hochstein received business cards that contained VSS's name and logo along with Hochstein's name and phone number. Hochstein received a laptop with software that allowed him to document his productivity and a VSS email address. VSS provided Hochstein with training on how to use the software.

8

VSS provided Hochstein with a list of existing customers to help create sales. Hochstein chose to mostly work from home, but VSS provided office space and a printer that Hochstein admitted to using so he would not have to "pay for the postage." Finally, VSS provided transportation and covered business expenses when Hochstein traveled to tradeshows.

Hochstein argues that the ULJ failed to ask any questions about the company credit card and that the credit card did not work. But when asked whether he ever incurred any expenses at tradeshows, Hochstein responded, "My main expenses were probably my clothing and if I used my car visiting any of these clients. But I never drove anywhere[,] so[] I didn't incur much for cost at all. No." Thus, this factor weighs in favor of an employer-employee relationship.

### Control of the Premises Where the Work is Performed

Hochstein argues that he controlled the premises where he performed his services. This factor provides the most support for Hochstein's assertion that he was an independent contractor. VSS allowed Hochstein to work from home and set his own schedule. Most of Hochstein's activity took place outside the office, over the phone. VSS provided a desk for Hochstein at its office, but it only required Hochstein to be at the office for meetings. Thus, this factor weighs in favor of an independent-contractor relationship.

### Right to Discharge

The ULJ found that VSS could discharge Hochstein at any time without incurring liability. Hochstein argues that VSS remained liable after discharge for commissions

9

earned but not yet paid. VSS argues that it had the right to discharge Hochstein at any time without incurring liability. "The right to discharge a worker without incurring liability is the other most important factor in determining whether a worker is an employee or independent contractor." *St. Croix Sensory Inc.*, 785 N.W.2d at 803.

Rubey testified that VSS had "every right to discharge [Hochstein] without liability." The ULJ found Rubey's testimony more credible than Hochstein's because it was detailed and presented a more logical chain of events. A ULJ's factual findings are reviewed in the light most favorable to the decision, and we give deference to credibility determinations. *Skarhus*, 721 N.W.2d at 344. Additionally, when asked whether VSS could discharge him at any time, Hochstein replied, "I would say yes." Employer-employee relationships are generally at-will, meaning the employer may discharge an employee for any reason or for no reason. *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 18 n.7 (Minn. 2009). Hochstein received two paychecks after VSS discharged him. But the paychecks were for sales completed prior to discharge. Viewing the record in a light most favorable to the decision, this factor weighs in favor of an employer-employee relationship.

The ULJ's findings are supported by the record, and the totality of the circumstances supports the ULJ's determination that Hochstein was an employee of VSS.

**Affirmed.**