*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1028, A15-1029**

Michael A. Pemrick,
Relator,

vs.

Department of Employment and Economic Development,
Respondent

**Filed April 11, 2016
Reversed
Worke, Judge**

Department of Employment and Economic Development
File No. 33119529-2

Kathleen E. Splett, Thomas M. Regan, Minneapolis, Minnesota (for relator)

Lee B. Nelson, Anne B. Bloomberg Froelich, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Employer challenges an unemployment-law judge's (ULJ) determination that 43 workers were employees, arguing that the workers were independent contractors and that

he was prejudiced by the ULJ's use of information regarding one worker to determine the status of 43. We reverse.

## FACTS

Relator Michael A. Pemrick owns Lock and Load, an installer of lockers and shelving units for businesses. In January 2014, one of Pemrick's workers, Troy Miller, was found to be eligible for unemployment benefits. Pemrick appealed the determination, asserting that Miller was not an employee but rather an independent contractor. A ULJ decided that Miller was an employee.

Respondent Department of Employment and Economic Development (DEED) then conducted an audit on Pemrick's other workers. DEED determined that Pemrick misclassified 43 workers as independent contractors and thus failed to report covered employment. Pemrick appealed the determination and participated in a telephone hearing with a ULJ.

Pemrick testified that all of Lock and Load's workers do the same thing, they install lockers and shelves. Pemrick finds workers through friends and by word of mouth, and uses the same workers regularly and consistently, although the workers are free to decline an offer for work. Pemrick enters into oral contracts with the workers. The terms of the contract depend on the worker and the job, but generally the contract dictates the time commitment, the job duties, and how the worker will be paid.

Pemrick does not provide training, and the workers do not wear uniforms. Pemrick or the worker provides hand tools. The customer provides large machinery,

2

such as a forklift or a scissor lift. If the job is on a construction site, the customer provides hardhats and eye and ear protection.

Installation jobs are done at the customer's location, and the customer generally dictates work hours. Pemrick does not require workers to start at a regularly scheduled time nor does he require workers to work any set days. Jobs can be as short as two hours or last up to six months. The average job lasts up to one week. Typically, there are three to four workers on a job. There is no foreman or supervisor on site. But if a customer does not want to pay wages, the customer hires temps to do the installation, and Pemrick sends a worker to supervise to ensure the job is done correctly. Workers are not required to follow any particular process or procedure while installing; as a group, the workers on a particular job determine the best way to complete the job.

Depending on the job, Pemrick pays workers hourly or per job. The majority of the time, pay is based on time and material. Workers report their hours daily, weekly, or at the end of the job, but they do not fill out any particular tracking form. Pemrick pays workers biweekly. The customer reimburses workers for expenses, such as hardware, tools, gas, hotel, and meals.

When workers fail to show for a job for several days or arrive late in the day, Pemrick may decide not to use them for future jobs. Pemrick stated that he "probably" has the ability to fire a worker, but he has done so only once. If a worker were asked to leave a job site Pemrick might allow the worker to come back to finish a job, or he or the customer would find someone else to complete it.

After hearing this testimony and considering the other evidence, the ULJ issued findings of fact and decision that the 43 workers are employees. Pemrick's petition for certiorari review follows.

## D E C I S I O N

### *Employees or independent contractors*

On review, we may affirm, modify, or reverse the decision of the ULJ or remand the case for further proceedings if the substantial rights of the relator may have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law, are unsupported by substantial evidence in the record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d)(4)-(6) (Supp. 2015).

The ULJ determined that Pemrick's workers are employees rather than independent contractors. "Whether an individual is an employee or an independent contractor is a mixed question of law and fact." *St. Croix Sensory Inc. v. Dep't of Emp't & Econ. Dev.*, 785 N.W.2d 796, 799 (Minn. App. 2010). We review the ULJ's findings of fact in the light most favorable to the decision and give deference to its credibility decisions. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But "the determination of whether an employment relationship exists is purely a legal question." *Neve v. Austin Daily Herald*, 552 N.W.2d 45, 48 (Minn. App. 1996).

Typically, five factors are considered to determine whether an individual is an employee or an independent contractor: "(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to

4

discharge." *St. Croix Sensory Inc.*, 785 N.W.2d at 800 (quotation omitted); *see* Minn. R. 3315.0555, subp. 1 (2015) (listing the five-factor test). Although the totality of the circumstances is considered when weighing the factors, *Moore Assocs., LLC v. Comm'r of Econ. Sec.*, 545 N.W.2d 389, 393 (Minn. App. 1996), the right to control the means and manner of performance and the right to discharge without incurring liability are the two most important considerations. *St. Croix Sensory Inc.*, 785 N.W.2d at 800.

### *Right to control the means and manner of performance*

"The determinative right of control is not merely over *what* is to be done, but primarily over *how* it is to be done." *Id.* (quotation omitted). "The retained right to instruct or direct the method of work, even if not exercised, is a factor indicating control." *Id.* at 801. "[I]t is the *right* to control, rather than the exercise of that right, that is determinative." *Moore Assocs., LLC*, 545 N.W.2d at 393.

The ULJ found that Pemrick controlled the means and manner of the workers' performance. In its brief to this court, DEED argues that the ULJ did not find credible Pemrick's claim that he does not have authority to control the means and manner of performance, and that we must defer to this credibility determination. *See Skarhus*, 721 N.W.2d at 344 (stating that we defer to the ULJ's credibility determinations). But in fact, the ULJ did not make any credibility determinations nor did the ULJ set out any reason for discrediting Pemrick. DEED's brief inaccurately cites facts not supported by the record in urging us to defer to the ULJ's credibility determinations.

At oral argument, DEED still attempted to persuade us to defer to the ULJ's alleged credibility determination, insisting that the ULJ found that Pemrick was not

credible due to inconsistencies in his testimony. As an example, DEED asserted that Pemrick was inconsistent in claiming that he does not have control over the means and manner of performance, but then testifying that he informs workers of the start time of a job. Pemrick testified that he has relayed to a worker the job location, a contact name, and the time the customer expected the worker to be there. However, we are not persuaded that informing a worker of a job location and start time is control over the means and manner of performance; thus, Pemrick's statements are not inconsistent.

The ULJ found that Pemrick controlled the means and manner of performance because (1) Pemrick hired a group of workers to work together; (2) the majority of the time Pemrick was on site and provided direction; (3) each worker was not free to work independently, using whatever processes or procedures he chose; (4) Pemrick entered into the agreement with the customer, not the worker; (5) Pemrick provided tools; and (6) Pemrick did not provide formal training, but trained a worker who was inexperienced upon his hire.

Our review of the record shows that Pemrick hired workers to install lockers and shelving units. Although the workers were not free to "work independently, using whatever processes or procedures he chose," it seems that there would be a limited number of processes available in the installation of lockers and shelves. Pemrick stated that he does not require workers to follow any processes or procedures, rather, as a group, the workers on a particular job determine the best way to complete the job. Thus, while Pemrick may have hired a group of workers to work together and instructed them to install a unit, there is not a great deal of individual flexibility for independence in the

6

manner of assembly. This is also true because the workers have to work together; common sense indicates that if each worker did an independent process, the project may never be completed. And because some workers are paid on a per-job basis, it is reasonable to infer that the worker would need to complete the job in order to receive payment.

DEED argues that Pemrick had control over the means and manner of performance because he conceded that, in order to get a job done satisfactorily, the workers on a particular job would have to be able to "meld into what's going on." DEED asserts that this concession supports a finding that Pemrick controlled the workers because the work could not be completed properly without control. But in *Hammes v. Suk*, the supreme court stated that an independent contractor is still subject to the employer's control as to the end product. 291 Minn. 233, 235, 190 N.W.2d 478, 481 (1971).

Pemrick also testified that he does not provide training, and the ULJ found that Pemrick does not provide formal training, but trained Miller upon his hire because he was inexperienced. The evidence shows that Pemrick trained only one inexperienced worker. Even if Pemrick may have demonstrated installation/assembly to all workers when he hired them for their first job, demonstrating installation/assembly is not necessarily the equivalent of providing training. Further, Pemrick testified that he uses the same workers regularly and consistently; thus, it is unlikely that Pemrick has inexperienced workers who require installation/assembly demonstration.

While the ULJ found this factor to weigh in favor of an employment relationship, this finding is unsupported by substantial evidence in the record. Rather, the substantial evidence in the record shows that this factor weighs in favor of a conclusion that the workers are independent contractors.

*Mode of payment*

The ULJ found that "[t]he majority of the time, the workers were paid . . . hourly on a fixed bi-weekly cycle," which is more indicative of an employment relationship.

Pemrick pays workers biweekly on an hourly or per-job basis. The workers have no particular hour-tracking form, and there is no uniformity as to when workers report their hours. Additionally, the customer reimburses workers for incurred expenses. Pemrick may pay the workers on a biweekly cycle, but that is the only element of the payment scheme that is conducted with any regularity. This factor is neutral.

*Furnishing of material or tools*

The ULJ found that while workers are free to use their own tools, Pemrick provides the majority of the tools used for a job.

The record does not show that Pemrick provides the majority of the tools. Pemrick provides hand tools, but the worker may use his own hand tools, and the customer provides large machinery. Pemrick does not have uniforms. On a construction site, the customer provides protective wear. Customers also reimburse a worker if he purchases a tool. Even if Pemrick provides hand tools, workers were not required to use his tools. This factor is neutral.

8

*Control of the premises where the work is done*

The ULJ found that workers were expected to be at the job site at a certain time based on Miller's statement that Pemrick would call or text him job information.

Pemrick has to provide the workers with information regarding job location; thus, he does have control over the premises where the work is to be done because it is where the customer is located. But a customer generally dictates work hours. Pemrick does not require workers to start at a regular time nor does he require workers to work any set days. Thus, Pemrick has control over where the work is to be completed, because it is where his customer is located, but the customer controls the premises. This factor is also neutral.

*Right of the employer to discharge*

"The right to discharge a worker without incurring liability is the other most important factor in determining whether a worker is an employee or independent contractor." *St. Croix Sensory Inc.*, 785 N.W.2d at 803; *see* Minn. R. 3315.0555, subp. 1. Independent contractors typically cannot have their services terminated without liability if they are fulfilling the terms of their contract with the hiring party. *St. Croix Sensory Inc.*, 785 N.W.2d at 803. On the other hand, "an employer may terminate an employee for any reason or for no reason." *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 18 n.7 (Minn. 2009). The ULJ found that Pemrick retained the right to discharge a worker without incurring liability, which supported an employer-employee relationship.

Pemrick testified that he "probably" has the ability to discharge somebody, but has done so only once; he discharged Miller for engaging in illicit activity at a job. Pemrick

9

testified that, when a worker was unsatisfactory for any given reason, not showing up for several days or often arriving after everyone else started, Pemrick might not hire that worker for a future job. But the worker would likely complete the current job. Pemrick testified that, if he or the customer asked a worker to leave a job, for example, for getting into a fight, Pemrick might allow the worker to return and finish the job, or he or the customer would find someone else to complete it. Pemrick's testimony indicates that he would not discharge a worker if the worker was fulfilling the terms of the contract.

Additionally, jobs could last two hours or up to six months; thus, it seems it would be a different scenario for each job. The record shows that the workers most often completed the jobs for which they were hired, but may not have been hired for another job if they did not do well. This is not the equivalent to a discharge.

An analysis of the five factors supports a conclusion that the workers are independent contractors because the two main factors—control over means and manner of performance and right to discharge—weigh in favor of a determination of the workers being independent contractors. The other factors are neutral or weigh slightly in favor of a determination of the workers being independent contractors.

*Prejudice*

Pemrick also argues that he was prejudiced because the ULJ based its decision on the status of all workers relying on the information provided by Miller. But because we determined that the workers are independent contractors, we do not need to address this issue as it is unnecessary to this decision.

**Reversed.**

10